PATRICK, Respondent, v. PATRICK, Appellant.

*September 7—October 2, 1962.*

435

436

For the appellant there was a brief by *Darrell MacIntyre,* attorney, and *George E. Hass* of counsel, both of Madison, and oral argument by *Mr. MacIntyre.*

For the respondent there was a brief by *Wheeler, Van Sickle, Day & Goodman* of Madison, and oral argument by *Roland B. Day.*

FAIRCHILD, J. 1. *Character of rights granted to James.* Ruth's counsel argues that the judgment provides for dual

custody (sometimes referred to as divided, or split custody) even though it specifically refers to James' right as "visitation." In the most-restricted sense, a parent's right to visit his child while in the custody of another, means a right of access to the child. Courts often deem it wise, however, to provide that visits may be made out of the presence of the custodian of the child, and removal of the child from the state may be permitted for the purpose of allowing a visit with a parent residing in a different state. It is recognized that the child as well as the parent ordinarily has an interest to be served by visitation.[1]

When custody has been awarded to one parent or a third party, and the other parent is awarded the right, for the purpose of visitation, to remove the child from the immediate care of the one having custody, the parent who exercises such right obtains a measure of authority over the child which would not be involved in mere access to it. In the nature of things the parent who removes the child and keeps it during a visit has an obligation to care for its immediate welfare and safety, and must control the child so far as is necessary to fulfil his obligation. His authority and obligation are not, however, equivalent to the authority and obligations of the one to whom the court has awarded custody.

" 'Custody,' in the sense we use it connotes, among other things, the right of the legal custodian to establish the legal domicile for the child, whereas such right does not abide with the parent who enjoys only the occasional right of visitation, *i.e.*, the right to visit the child wherever it is, at certain time, or to have the child visit the parent for stipulated periods." [2]

"Custody embraces the sum of parental rights with respect to the rearing of a child, including its care. It includes

---

[1] 2 Nelson, Divorce and Annulment (2d ed., 1961 rev.), p. 274 ff., sec. 15.26.

[2] *McFadden v. McFadden* (1956), 206 Or. 253, 261, 292 Pac. (2d) 795, 799.

the right to the child's services and earnings, Civ. Code, sec. 197, and the right to direct his activities and make decisions regarding his care and control, education, health, and religion."[3]

It is recognized that there is significance in an award of custody to one person even if the court requires that the child live elsewhere. In *Julien v. Julien*[4] the judgment appealed from required the child to remain at an institution, but did not award custody to anyone. This court considered the judgment incomplete and ascribed to a statute the purpose "that there shall be at least one person directly chargeable with the responsibility that accompanies having custody of a minor child."

In *Bohn v. Bohn*[5] this court recited that in a judgment preceding the order being reviewed, the trial court, on a finding that neither parent was fit to have custody, had awarded custody to the county department of public welfare, but directed that the children be left with the mother as long as she co-operated with the department.

The judgment before us on this appeal clearly awarded custody of Randolph to Ruth. James will not have custody during Randolph's visits, but only such obligation and authority as are practical necessities during such visits.

2. *No abuse of discretion.* Several principles must be considered in our review of the portion of the judgment permitting visitation at James' home in Florida.

A. The fact that Randolph would be outside the territorial jurisdiction of a Wisconsin court should not prevent the visitation, if such removal is consistent with his welfare.[6]

---

[3] *Burge v. City & County of San Francisco* (1953), 41 Cal. (2d) 608, 617, 262 Pac. (2d) 6, 12.

[4] (1953), 265 Wis. 85, 91, 60 N. W. (2d) 753.

[5] (1962), 16 Wis. (2d) 258, 114 N. W. (2d) 423.

[6] *Peterson v. Peterson* (1961), 13 Wis. (2d) 26, 28, 108 N. W. (2d) 126.

B. "Minor children are entitled to the love and companionship of both parents insofar as this is possible and consistent with their welfare." [7]

C. "This court has repeatedly held that the matter of custody of children in divorce actions is a matter peculiarly within the jurisdiction of the trial court, who has seen the parties, had an opportunity to observe their conduct, and is in much-better position to determine where the best interests of the children lie than is an appellate court." [8]

James is forty-two, has been steadily and regularly employed, and owns an adequate home. His mother lives a block away. She testified that she would stay in James' home to help care for Randolph during Randolph's visits. There was testimony that James is a good father and loves Randolph.

Ruth is forty-one and lives and works in Madison. Randolph stays with Ruth's sister and her family on a farm about 50 miles away. Ruth visits him once a week.

James is a man of modest means. His home is 1,500 miles from Madison. The county court undoubtedly was impressed with the fact that to refuse to allow James to have Randolph in Florida would make difficult any normal relationship between Randolph and his father.

James admitted having struck Ruth on several occasions and having struck Larry, Ruth's sixteen-year-old son by a former husband. James expressed regret and acknowledged that he was in the wrong on at least some of these occasions. The evidence indicated the areas of disagreement between James and Ruth and between both of them and Larry. Under the circumstances, the county court could reasonably

[7] *Block v. Block* (1961), 15 Wis. (2d) 291, 298, 112 N. W. (2d) 923.

[8] *Brown v. Brown* (1960), 9 Wis. (2d) 322, 327, 101 N. W. (2d) 48, quoted in *Bliffert v. Bliffert* (1961), 14 Wis. (2d) 316, 319, 111 N. W. (2d) 188.

conclude that although James had acted improperly toward his wife and stepson on these occasions, it was improbable that he would mistreat Randolph.

Ruth requested this court to order a psychiatric examination of James and claims that it was an.abuse of discretion to award extensive visitation rights without doing so.

The claim is based upon evidence of the assaults above referred to and upon several voluminous letters written by James to Ruth and to Larry's paternal grandmother with whom Larry is now living. The letters are very long, contain many references to and quotations from the Bible, much discussion of religious doctrines, and one of them refers to and explains a vision James had had years ago. The letters do not contain threats, but seem to have been written in large part in the hope of reconciliation. They may strike most people as being unusual in the extent to which James attempts to explain events by applying religious doctrines. It should be observed, however, that James and Ruth are of different faiths, and it appears that some of the differences in belief were very disturbing to James if not to both. We cannot say that the letters raise so serious a question of mental health as to make it an abuse of discretion not to compel a psychiatric examination as a condition of awarding visitation rights.

There is no such evidence of violent and sadistic conduct on James' part as was present in *Neblett v. Neblett* [9] and caused us to state that the trial court in that case would have been remiss in its duty to allow visitation without requiring a psychiatric examination.

3. *Division of property.* The judgment provided:

"3. It is further ordered, adjudged, and decreed that as a full, final, and complete division of the property and estate

[9] (1957), 274 Wis. 574, 81 N. W. (2d) 61.

of the said parties, there shall be and hereby is confirmed in each party, title to that property in possession of each."

Ruth's counsel asserts that the county court should not have ordered a division of property, and we agree.

The pleadings made no reference to a division of property, although the prayer for relief in the complaint included a prayer for equitable relief in general. There was evidence as to the value of James' home in Florida, and the fact that Ruth took their automobile with her, as well as evidence concerning their earnings. It would appear, however, that these facts were brought in concerning other issues, and the record does not suggest that either party attempted a full presentation of evidence relevant to division of property.

Early in the trial, the court said:

"Now, we are not in contest as far as the property is concerned, and support payments. I think the financial picture is not important."

Apparently the course of the trial changed with respect to support payments. At least neither party objects to that part of the judgment. Assuming, however, the court's jurisdiction to order a division of property if the issue were brought before it, we consider it error to attempt to adjudicate an issue which the parties did not litigate.

To correct the error, we deem it sufficient to strike this portion from the judgment, so that it will not in any way affect the property rights of the parties.

4. *Allowance of attorney fees.* The judgment provided that each party shall pay his own attorney's fees and costs of this action. In *Julien v. Julien* [10] the court held, at page 90:

"The matter of allowance of attorney fees in a divorce case is discretionary with the trial court, and unless it can

---

[10] *Supra,* footnote 4.

be shown that the court abused its discretionary power, this court will affirm the determination made by the trial court."

James incurred considerable expense in coming to Wisconsin and trying his action here. The court may have considered that Ruth's opposition to any visitation of Randolph by James was unreasonable and imposed expense on him unfairly. Failure to allow attorney fees was not an abuse of discretion.

*By the Court.*—Judgment modified to delete that provision relating to the division of property and, as so modified, affirmed. No. costs to be taxed by either party on this appeal.