Michael A. Wallace, a Minor by Allen Wallace, His Father and Next Friend, Plaintiff-Appellant, v. Jeanine Wallace, Defendant-Appellee.

Gen. No. 50,015.

First District, Second Division.

April 27, 1965.

Ehrlich, Bundesen, Friedman & Ross, of Chicago (Irving S. Friedman, of counsel), for appellant.

Joseph H. and Norman Becker, and Harry G. Fins, of Chicago, for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court:

This appeal comes from an order dated July 1, 1964, entered in the Circuit Court of Cook County, which dismissed appellant's complaint for want of equity.

The facts of this case are not a matter of great dispute. This action is being brought on behalf of Michael Wallace, now a minor a little more than five years of age, by Allen Wallace as his father and next friend. Allen Wallace is not now, nor has he ever been, married to the child's mother Jeanine Wallace. The child's parents lived together for some time prior to the birth of Michael, and continued this relationship until December 1, 1961, almost two years after the child's birth.

After Allen and Jeanine Wallace parted, the father was permitted to visit the child and Allen Wallace contributed to his child's support. About October, 1963, Jeanine Wallace refused Allen permission to visit the child and also refused to take any more

money from him for support of Michael. Two months later, on December 5, 1963, Allen Wallace instituted a divorce proceeding against the child's mother, alleging a common-law marriage in that they had lived together as man and wife in Florida for two weeks. This action was dismissed on February 3, 1964, when the Court found that no marriage ever existed between the parties and ordered the action to be dismissed.

In April, 1964, this action was filed by Allen Wallace on behalf of his child. The appellant's theory of the case is that nothing done by the Court incident to the divorce proceedings can affect his right, since he was not a party to that action. It is also urged that the Court had no power to make any orders concerning custody of a child since the Court held that there was never any marriage between the parties and, therefore, deprived itself of jurisdiction over the custody of children.

The appellee's theory of the case is that even though no divorce was granted, the Court had jurisdiction to grant custody of the child and that the Court's action was proper because Allen Wallace is not a fit person to have custody of a minor.

This case seems unique in that the action is not brought by the father to get custody of his child, but is brought by the child to have the right of his father's companionship. It becomes necessary then to discuss the legal relationship between the father of an illegitimate child and his offspring.

The Paternity Act, c 106¾ Ill Rev Stats 1963, states in sec 52, that "The father of a child born out of wedlock whose paternity is established in a proceeding under this Act shall be liable for its support, maintenance, education and welfare . . . to the same extent and in the same manner as the father of a child born in lawful wedlock. . . ." There is no question here that Allan Wallace is the father of the child in question, and this statute makes it clear that if

ordered by a proper court, this father would have to support his child.

Sec 62 of the Paternity Act reads, "A person charged or alleged to be the father of a child born out of wedlock whether or not adjudicated the father under this Act, shall have no right to the custody or control of the child except such custody as may be granted pursuant to an adoption proceeding initiated by him for that purpose." Reading this section in conjunction with the section quoted immediately above, the legislature's view of the relationship of an illegitimate child and its father is revealed. The father has the duties to his illegitimate child equal to the duties of a father of a legitimate child, but he has none of the rights enjoyed by the father of a child born in wedlock.

█ As was pointed out in 46 Ill L Rev 156 (1951), "Rights of a Father toward His Illegitimate Child in Illinois" Sec 62 was originally enacted to avoid conflicts with the adoption act then in force and which for the purposes of this cause does not differ in any substantial respect from the present law. Sec 9.1–8 of the Adoption Act of 1959, c 4, Ill Rev Stats, 1963. That section reads in part: "A consent shall not be required from the father of an illegitimate child [for the adoption of the child], nor shall the consent of the father of an illegitimate child be required after marriage of the father to the mother of an illegitimate child, where consent to adoption has been given by the mother prior to the marriage, nor shall a consent be required from the father of an illegitimate child notwithstanding that the father of such child has been ordered to support such child in accordance with the provisions of the Paternity Act."

 As is pointed out in the Illinois Law Review article cited supra, the effect of these statutory revisions is basically to place the father of an illegitimate child in the same position as he would have been under common law. Under the common law the father of an

illegitimate child was not considered a parent. Wright v. Bennett, 7 Ill 587 (1845). Under the laws of this state, such a father is a parent only to the extent that he must support his child. It is clear, therefore, that Allen Wallace has absolutely no right to the custody or society of his minor child.

As we noted above, however, the form of this suit is such that the action has been brought in the name of the child, claiming he has the right to the support and society of his father. We find that nothing has been brought before this Court which establishes that such a right exists in a child.

The first point made by the appellant in his argument on appeal is that a court of chancery will take jurisdiction of a complaint filed on behalf of a minor child to protect his person and interests. The doctrine of parens patriae is called on in support of this proposition. The first Illinois case cited for this position is that of Cardenas v. Cardenas, 12 Ill App2d 497, 140 NE2d 377. As was noted earlier, this case merely holds that when a court grants a decree of annulment, it has the power to determine the custody of the children of the parties.

People ex rel. Crofts v. Wait, 243 Ill App 367 (1927) held that the courts may change a decree issued by the courts of another state where it appears that such a modification would be for the best interests of a child. In that case all the parties moved to Illinois following the divorce in Ohio. There was no question in that case but that the child was legitimate, and we find it has little relevancy to the question of whether this appellant has stated a cause of action. People ex rel. Hargrove v. Slive, 250 Ill App 601 (1928), was another case where parents of a legitimate child were fighting over its custody.

Parker v. Parker, 335 Ill App 293, 81 NE2d 745 (1948), held that a court may order the father of a

child to pay for its support. Again, the child in this case was the legitimate child of divorced parents. The appellant also cites In re Vera Brown, dependent girl, 117 Ill App 332 (1904), where the court held that a child can be taken away from its parents if the home becomes unfit. It is said there, that the primary duty in raising a child is on the parents, but that such duty is not exclusive or final. We do not see, nor is it explained to us, how this has any relationship to the matter now at bar.

The appellant argues vigorously that every child has the right to the support and society of his father. In support of this he cites art II, sec 19 of the Illinois Constitution. That section reads, "Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation; he ought to obtain, by law, right and justice freely, and without being obliged to purchase it, completely and without denial, promptly, and without delay."

■ ■ The Supreme Court studied this section and held, "Section 19 enunciates a basic policy of jurisprudence that serves both to preserve the rights recognized by the common law and to permit the fashioning of new remedies to meet changing conditions. However, this policy expression does not authorize us to create a cause of action unknown to the common law in the face of an express statutory prohibition." Heckendorn v. First Nat. Bank, 19 Ill2d 190, 194, 166 NE2d 571, 573. It seems clear that to permit this child to bring an action for the companionship of his father would be to fashion a remedy new to this state. Under the common law the father of an illegitimate child was not considered a parent. The action sought is not recognized at common law, and the appellant cannot make use of art II, sec 19 of the Illinois Constitution, to create this new remedy.

305

We cannot discuss this case without noting that in fact the father of this child is bringing this action, not the child. By bringing this action in the name of his minor son, Allen Wallace attempted to bypass the clear legislative intent that the father of an illegitimate child should have no rights to its companionship. The legislature made the decision that on the whole it would be for the best interests of these children that there be no such rights. This Court would be lax in performing its duties if it allowed the express intent of the legislature to be ignored by so obvious a ruse as this. We hold that the father of an illegitimate child may not bring an action in the name of that child in a suit asking for the companionship and support of the parent. We hold that the complaint does not state a cause of action. The Court below properly dismissed the complaint for want of equity. For the reasons stated in this opinion, the order of the Circuit Court is affirmed.

Order affirmed.

BURKE, P. J. and LYONS, J., concur.