(No. 39659.—

RALPH PAUL DePHILLIPS, Appellant, *vs.* DONNA JEAN DePHILLIPS *et al.,* Appellees.

*Opinion filed June 16, 1966.—Rehearing denied September 21, 1966.*

KLINGBIEL, C.J., dissenting.

GARRETSON, LEHMANN AND THORNQUIST, of Chicago, (JAMES L. GARRETSON and RUTH THORNQUIST, of counsel,) for appellant.

DAVID WANDELL, of Chicago, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Plaintiff, Ralph Paul DePhillips, the father of a 12-year-old child born out of wedlock, brought suit in the circuit

court of Cook County against the mother and her purported husband to obtain custody of the child or, in the alternative, visitation rights. He also asked that he be required to contribute to the support of the child. Defendants' motion to dismiss the complaint was denied. After a hearing, the court entered an order that plaintiff contribute to the support of the child and have rights of visitation. Defendants appealed to the appellate court, but that court reversed and remanded with directions to vacate the decree on the ground that the trial court lacked jurisdiction to render a judgment due to the illegal behavior of the parties. (63 Ill. App. 2d 19.) We granted plaintiff leave to appeal.

The only brief which has been filed in this case is plaintiff's petition for leave to appeal. From the complaint, it appears that in 1951 the plaintiff began living and cohabiting with defendant, Joan Harvey. The plaintiff and Joan Harvey lived together as man and wife for nine years, the child Donna being born to them on December 28, 1951. In 1960, Joan Harvey left the plaintiff and entered into a purported marriage with defendant John H. Harvey. Defendant Joan Harvey took the child Donna into her custody, but plaintiff continued to support the child for about a year thereafter until Joan Harvey declined to accept further payments. In 1962, defendants Joan and John Harvey obtained a decree of adoption as to Donna. Since that time they have concealed the child from plaintiff and have refused to permit him to visit with the child.

The question of what rights, if any, the father of an illegitimate child should have as to that child is a troublesome one, and one as to which strong and appealing arguments can be made on opposing sides. (See: Note, 26 Albany L. Rev. 335; Note, 46 Ill. L. Rev. 156.) These opposing arguments are well set forth in the recent decision of *Commonwealth of Pennsylvania* v. *Rozanski,* 206 Pa. Sup. 397, 213 A. 2d 155, in which that Pennsylvania court overruled its earlier decisions and held that a putative father should

have a right to visit his illegitimate child if such visitation was deemed to be in the best interests of the child. "To state as a matter of law that the visits of a putative father are always detrimental to the illegitimate child's best interests is to exalt rule over reality. This approach ignores the growing recognition in our courts, and in courts throughout the nation, of the need to determine the welfare of each child in light of his own particular needs and circumstances. The putative father may, in many instances, instill in the child a sense of stability. He may develop qualities in the child which the mother is uninterested, unwilling or incapable of developing. To the extent that he can perform such a valuable service, his presence becomes exceedingly important. Certainly, to the illegitimate child the father is never putative." 213 A. 2d at 157.

The dissenting opinion, however, points out that " 'as a matter of legal policy * * * it is detrimental to the welfare of an illegitimate child in the mother's custody to award visitation privileges to the putative father.' The grant of such rights emphasizes and advertises to the community in general the illegitimacy of the child to the child's detriment. It can, too, by this sanction of the creation of legal rights in a putative father, encourage the renewal of the meretricious relationship between the parties which cannot possibly contribute to the welfare of the child." 213 A. 2d at 159.

We are not faced in this case with the difficult public policy determination which has troubled courts in other jurisdictions. In Illinois, this determination has been made by our legislature, and is embodied in section 13 of the Bastardy Act of 1872, as amended. At the time of Donna's birth in 1951, that section provided that "The reputed father of a bastard child shall have no right to the custody or control of such child". (Ill. Rev. Stat. 1951, chap. 17, par. 13.) As we have previously held, the act in effect at the time of the birth of an illegitimate child must be looked

to in determining the rights and liabilities of the father of such child. *Di Bella* v. *Cuccio,* 15 Ill.2d 580.

Plaintiff suggests that this section prohibits only custody or control but does not expressly proscribe the granting of visitation rights to a parent. Although an argument may be made that a grant of visitation right does not necessarily grant legal custody (see *Ruberts* v. *Ruberts,* 4 Ill. App. 2d 134; *Blonsley* v. *Blonsley,* 52 Ill. App. 2d 391; *In re Hardestys Adoption,* 150 Kan. 271; 92 P.2d 49; *Patrick* v. *Patrick,* 17 Wis. 2d 434, 117 N.W.2d 256; *McFadden* v. *McFadden,* 206 Ore. 253, 292 P.2d 795; but see *Downey* v. *Downey,* 183 La. 424, 164 So. 160; *Lewis* v. *Lewis,* (Ct. App. La.) 148 So. 2d 420), section 13 of the Bastardy Act, as amended, prohibits not only the granting of custody but also the granting of "control" to a putative father. "Control" is defined in Black's Law Dictionary, Fourth Edition, as the "power or authority to manage, direct, superintend, restrict, regulate, direct, govern, administer, or oversee". In our opinion, a grant of visitation rights of necessity involves a grant of "control" over a minor child. Section 13 clearly embodies a legislative determination that a putative father should have no right to the society of his illegitimate child. (*Wallace* v. *Wallace,* 60 Ill. App. 2d 300.) A contrary construction of the statute can not be justified.

Plaintiff's complaint in this case prayed that he be granted custody or visitation rights as to Donna. By statute, he was not permitted to have either. Consequently, the complaint should have been dismissed for want of equity in the trial court on defendants' motion. The judgment of the appellate court must therefore be affirmed insofar as it reverses and remands the cause to the circuit court of Cook County with directions that the court vacate the decree heretofore entered by it and dismiss the complaint with prejudice.

*Judgment affirmed.*

Mr. CHIEF JUSTICE KLINGBIEL, dissenting:

In my opinion the court's construction of this statute is completely unwarranted, either by law or by common sense. By its terms it precludes only custody or control, not visitation rights, and by no stretch of the imagination can the two be equated. To say that a grant of visitation rights involves a grant of control is to ignore not only common definitions but long established judicial usage. In *Burge* v. *Burge*, 88 Ill. 164, a divorce case, this court had occasion to consider visitation rights. The opinion says, in part, that "It is urged that the decree giving the care, custody, control and education of the children to defendant in error is too broad, as it makes no provision for plaintiff in error to visit and see them. We do not see that this is error. We understand it to be his legal right to visit his children, at convenient and proper times, in a decent and respectful manner, and without using improper influences to dissatisfy them with their mother, or to influence them to go with him. He, of course, in visiting them, must be governed by the rules of propriety, and has no right, in any manner, to abuse the right, and if he should, he might properly be debarred the privilege." It was clearly held that though the mother had sole care, custody, *"control"* and education the father nevertheless was entitled to *visit,* the implication being unmistakable that a visit does not involve control. Judicial recognition of the difference in cases where custody of children is involved in divorce matters is too well known to require further elaboration here. There is no call for different definitions in cases of children born out of wedlock.

The majority opinion sets forth a definition of "control" which nowhere mentions visitation, and then proceeds with the *non sequitur* that a visitation right necessarily involves it. To "visit",—a term which the opinion fails to define in spite of the fact that it is the very act involved here—means simply to go to see or pay a call upon. (Webster's *New Second International Dictionary,* 2d ed., 1939.) If a right is

granted to temporarily remove the child from time to time and thus to assume some duty to manage or oversee, it is no longer a mere right to visit. But that is a different matter. What the court is writing into the statute here is a prohibition of a father's right merely to see or pay a call upon his child.

Of all the matters which ought not be made the subject of generalized command for all cases, none is more important than the relationship of parent to child. Nowhere is this thought better expressed than in the opinion of the court in *Commonwealth* v. *Rozanski;* 206 Pa. Super. 397, 213 A. 2d 155, where it was said "To state as a matter of law that the visits of a putative father are always detrimental to the illegitimate child's best interests is to exalt rule over reality. This approach ignores the growing recognition in our courts, and in courts throughout the nation, of the need to determine the welfare of each child in light of his own particular needs and circumstances." Neither the language of our statute nor any sensible interpretation of "policy" justifies this court in depriving a putative father of the society of his child under any and all circumstances. Indeed, many instances can arise in which visits by the father would be in the best interests of the child and of humanity as well. The factors involved are too diverse to be reducible to some mechanical prohibition, and the question ought to be decided on the basis of the individual case.

I would reverse the Appellate Court judgment in this case and affirm the decree of the circuit court.