In *re* CUSTODY OF BERNICE JOSETHE MYER, a Minor.—(RONALD C. MYER, Petitioner-Appellant, *v.* CANDIDA ALVARADO, Respondent-Appellee.)

Fourth District    No. 17034

Opinion filed September 9, 1981.

Charles G. Reynard, of Bloomington, for appellant.

John H. Tielsch, of Normal, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal presents an unusual question concerning the scope of the custody provisions of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, pars. 601-610) (Act).

Petitioner and respondent enjoyed a brief liaison during a tour of duty by petitioner in the United States Navy. The minor child, who is the subject of these proceedings, was the result. She was born January 6, 1970. Petitioner has acknowledged paternity, and it is undisputed that peti-

tioner and respondent have never married and that they are the natural parents of the minor.

On October 22, 1980, petitioner filed in the circuit court of McLean County a petition seeking visitation rights with the minor. It alleged the status of the parties as recited above and further alleged that during the first eight years of the minor's life respondent and the minor resided with petitioner's parents in McLean County for substantial periods of time. Further allegations were that a relationship of parental and filial love had arisen during that time between the minor child and the petitioner, and between the minor child and petitioner's parents. The latter were also original petitioners but were afterwards dismissed by the trial court as improper parties.

Petitioner seeks to undertake responsibilities for the minor's support and welfare, and, while not seeking custody, asks that reasonable visitation rights be granted to him. He alleged prior efforts at visitation but claimed that these had been frustrated by respondent.

Respondent filed a "response" to the petition. In it she admitted the circumstances surrounding the birth of the minor, essentially denied that any relationship had arisen between the child and the petitioner, detailed some of the cultural and religious differences which had arisen between her and petitioner's parents, and admitted her firm refusal to allow visitation.

Both the petition and the response refer to an order of the juvenile court concerning the minor. The petition alleges that this order, dated June 19, 1979, vests custody of the minor in respondent; the response filed in this case asks that the order be continued in full force and effect. This court, on its own motion, directed that the record in this case be supplemented with a copy of that order. It is now before us, and more will be said of it later.

The trial court took some brief evidence from the petitioner. The respondent did not appear at the hearing. Memoranda of law were submitted by counsel, and the court ultimately entered a brief order dismissing the petition on the ground that no cause of action is recognized in this State for the initiation of an original proceeding by a parent seeking visitation rights with his child when he has never had custody, has never been married to the natural mother, and the parties have never lived together as a family.

The positions of the parties on appeal may be briefly summarized as follows: Petitioner claims that the custody provisions of the Act provide a vehicle for adjudicating visitation rights under the facts of this case and that the pendency of a dissolution or separation action is unnecessary to confer jurisdiction on the trial court for such adjudication. He therefore

argues that the trial court erred in finding that he could not state a cause of action. He argues further that the finding was against the manifest weight of the evidence. Since the evidence taken was so attenuated and since, further, the trial court disposed of the case on legal grounds, we will not consider at this time the latter argument.

Respondent argues that prior to the Act *habeas corpus* was the only vehicle by which a putative father might assert visitation rights. However, she appears to admit *sub silentio* that such a proceeding may be proper under the Act, but points out an allegation in the petition that custody was settled in the juvenile order of June 19, 1979. Therefore, the instant case is a modification proceeding, and section 610 of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 610) prohibits any modification action earlier than two years after the date of the custody order. The instant petition, having been filed approximately 16 months after the juvenile order, is therefore, in her opinion, premature. Alternatively, she argues that while section 601 of the Act permits a "custody" proceeding, section 607 (Ill. Rev. Stat. 1979, ch. 40, par. 607) dealing with "visitation" does not provide for the filing of a petition. Further, she claims, whatever the nature of the petition is in this case, it does not meet the requirements of the Habeas Corpus Act (Ill. Rev. Stat. 1979, ch. 65, par. 3).

The problem was stated tersely by Mr. Justice Simon in *People ex rel. Elmore v. Elmore* (1977), 46 Ill. App. 3d 504, 506, 361 N.E.2d 615, 617, as follows:

> "In the absence of legislation establishing a procedure for resolving a dispute over custody of a child between parents who never have been married, society requires that the law shape an appropriate forum. The alternative is self-help, a solution not countenanced by this court because it serves the best interests of neither the child nor the parents. A court adjudicating a dispute between parents over custody of a legitimate child would be guided by what is in the best interest of the child and would best promote its welfare. [Citation.] We perceive no justification for proceeding differently with a child born out of wedlock."

The *Elmore* court was facing a situation under section 13 of the former divorce act (Ill. Rev. Stat. 1975, ch. 40, par. 14) which provided insofar as is pertinent here:

> "The court may, on the application of either party, make such order concerning the custody and care of the minor children *of the parties during the pendency of the suit* as may be deemed expedient and for the benefit of the children * * *." (Emphasis added.)

Since no suit for divorce was pending, the court was forced to fall back on *habeas corpus* in order to grant relief.

The former statute proceeded on the common law doctrine that an illegitimate was *nullius filius* and made provision for legitimates only ("of the parties") and only during the pendency of a suit. Except for details of mechanics of procedure, the former statute remained essentially unchanged from the time of enactment in 1874 until the general overhaul by the Illinois Marriage and Dissolution of Marriage Act, which became effective in 1977.

During the interim the courts were forced to invent remedies and most of them, like the *Elmore* court, relied on *habeas corpus*. However, there was a growing recognition of the problem of the rights of putative fathers. In *DePhillips v. DePhillips* (1966), 35 Ill. 2d 154, 219 N.E.2d 465, the supreme court acknowledged the troublesome question, which reached its culmination in *Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208, wherein the Supreme Court held a portion of the Paternity Act (Ill. Rev. Stat. 1967, ch. 106 3/4, par. 62) unconstitutional as denying a putative father due process and equal protection. Following *Stanley*, our own supreme court held unconstitutional a portion of the Adoption Act (Ill. Rev. Stat. 1969, ch. 4, pars. 9.1—1E, 9.1—8) in *People ex rel. Slawek v. Covenant Children's Home* (1972), 52 Ill. 2d 20, 284 N.E.2d 291.

In 1976, the appellate court, following a Pennsylvania decision (*Commonwealth v. Rozanski* (1965), 206 Pa. Super. 397, 213 A.2d 155), held in a paternity action that the putative father had rights of visitation upon a showing that his visits would not be detrimental to the best interests of the child, and conditioned upon his acknowledgment of the child and his contributing towards its support. *People ex rel. Vallera v. Rivera* (1976), 39 Ill. App. 3d 775, 351 N.E.2d 391.

We cannot assume that the legislature was unaware of this considerable body of authority when it enacted the Illinois Marriage and Dissolution of Marriage Act in 1977. On the contrary, we believe that section 601 of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 601) was intended to provide for the situation presented in the instant case.

Section 601(b)(1)(i) and (ii) provides in pertinent part:

"(b) A child custody proceeding is commenced in the court:

(1) by a parent, by filing a petition:

(i) for dissolution of marriage or legal separation or declaration of invalidity of marriage; or

(ii) for custody of the child * * *."

Two significant differences in statutory language from the former act are immediately apparent: (1) Section 601 refers to "the child," not "the children of the parties," and (2) the custody proceeding is independent of the dissolution litigation. This is further borne out by language found in section 603(c) (Ill. Rev. Stat. 1979, ch. 40, par. 603(c)):

"If a custody proceeding commenced in the absence of a petition for dissolution of marriage or legal separation, either under subparagraph (ii) of paragraph (1) * * * is dismissed * * *."

■■ It appears to us that the language of sections 601 and 603 is sufficiently broad to encompass a custody proceeding *dehors* a marriage relationship. Their placement in the Act is only an acknowledgment that the great bulk of cases will grow out of a marriage relationship. By utilizing section 601 in cases like the instant one, the fiction of detention which must be used in *habeas corpus* is avoided and the court is guided by the other sections of part VI of the Act.

■■■ We turn next to the question as to whether statutory provisions relating to custody may be employed to adjudicate only a question of visitation. We adhere to our statement in *People v. Harrison* (1980), 82 Ill. App. 3d 530, 402 N.E.2d 822, that visitation is a form of custody and subject to the custody rules as set forth in part VI of the Act. We do not agree with respondent's contention that *In re Custody of Mueller* (1979), 76 Ill. App. 3d 860, 395 N.E.2d 677, is at odds with *Harrison*, or with our decision in the instant case. In *Mueller*, the respondent was attempting to use the modification of visitation as a bar to modification of custody. While both are aspects of the same problem, they are qualitatively different. It would be possible to plead a modification of visitation within the statutory limit (Ill. Rev. Stat. 1979, ch. 40, par. 610) as a bar to a subsequent petition for modification of visitation; it would not so act under a petition for modification of custody. The appellate court so held and quoted the Colorado court that " '[l]abeling this "visitation" does not change its substance which is "custody." ' " (76 Ill. App. 3d 860, 861, 395 N.E.2d 677, 678.) The bar applies, but only to like orders: custody versus custody, or visitation versus visitation.

Both parties to this appeal rely upon an order of the juvenile court dated June 19, 1979, which, as we have already indicated, has been made a supplement to the record here on our order. We have examined that order with care and find that it does not apply to the instant proceeding. It was an adjudication order growing out of a shelter care prior order of the same court. It appears that the parties were each claiming rights to the minor and the threat of abduction was present. The court therefore ordered the minor taken into shelter care by the Department of Children and Family Services, pending further hearing.

■■ The order returned the minor to the respondent with whom she had been living prior to the shelter care proceeding, and dismissed the petition. The court never proceeded to a dispositional hearing and did not retain jurisdiction of the minor. The court was simply meeting an emergency situation, and its dismissal of the petition prevents its use for any

purpose in the instant proceeding. The petitioner here is in error in stating that custody was settled in the juvenile proceeding and the respondent is in error in claiming that the instant proceeding is an attempted modification.

In summary, we hold that the rights of a putative father who acknowledges an illegitimate child are recognized under the law and that he thereby assumes burdens along with benefits; that the fiction of *habeas corpus* is no longer a proper vehicle to enforce those rights, but at least the right of visitation is encompassed by section 601 of the Act.

The order of the circuit court of McLean County is therefore reversed and the cause is remanded with directions to that court to receive whatever additional evidence the parties may desire to offer, and to fix visitation rights of the petitioner based upon the best interests of the child in the manner provided by section 602 of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 602). The court should further consider such orders of support as may be appropriate.

Reversed and remanded with directions.

MILLS and LONDRIGAN, JJ., concur.