[Cite as *In re J.R.P.*, 2026-Ohio-827.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

IN RE J.R.P. :

A Minor Child :

No. 114805

[Appeal by M.G., Father] :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 12, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU11109745

---

### *Appearances:*

Rachel A. Kopec, *for appellant*.

Cavitch, Familo & Durkin Co. LPA and Bradley Hull IV,
*for appellee*.

---

DEENA R. CALABRESE, J.:

{¶ 1} Appellant ("Father") appeals the juvenile court's order denying his motion to terminate shared parenting and the order reducing his parenting time and placing new restrictions on his parenting time. We affirm the juvenile court's orders because the juvenile court reviewed the relevant best-interest factors and did not abuse its discretion when making its determination.

## I. Relevant Facts and Procedural History

{¶ 2} Father and appellee ("Mother") were never married and share one child, J.R.P. (d.o.b. 2/9/2011). On May 31, 2011, Father filed an application to determine custody with the Juvenile Division of the Cuyahoga County Common Pleas Court. Mother and Father entered into interim agreements setting a visitation schedule with Father on September 14, 2011, and November 8, 2011. On January 20, 2012, Mother and Father agreed to an interim shared-parenting plan. On June 11, 2013, Mother and Father entered into an agreement for a shared-parenting plan. The parties engaged in ongoing conflict regarding their shared parenting that resulted in new filings, and, on June 6, 2017, they entered into an amended shared-parenting plan. As part of the amended shared-parenting plan, both Mother and Father were designated as the residential parents and legal custodians of J.R.P. when he was in their respective possession under the parenting schedule. The shared-parenting plan set forth a schedule for parenting time. Mother was designated as the residential parent for school purposes only.

{¶ 3} Mother and Father continued to engage in conflict regarding their shared parenting. As a result, on October 25, 2021, Father filed a motion to show cause, a motion to modify visitation, and a motion to terminate shared parenting. Father's motion to terminate shared parenting and terminate visitation asked that he be designated as the sole legal custodian of J.R.P. The motion alleged, in part, that Mother did not follow the shared-parenting plan by refusing to allow Father to exercise his visitation time, refusing to allow Father to exercise his right to make up

time per the agreement, and that Mother strategically used her vacation time in small increments to prevent Father from seeing J.R.P. for extended periods of time.

{¶ 4} On March 28, 2022, Mother filed a motion to terminate the shared-parenting plan and to modify the parenting time schedule. Mother's motion alleged, in part, that Father's exercise of parenting time during the week was harmful to J.R.P. and not in his best interests, that Father was verbally abusive and displayed intimidation towards J.R.P., that Father did not follow the shared-parenting plan, and that Father did not follow medical advice when J.R.P. was in his care and custody. Mother's motion asked the juvenile court to eliminate Father's midweek parenting time, reduce Father's rights to contact J.R.P. during Mother's parenting time, and eliminate Father's decision-making for school, medical, and recreational issues.

{¶ 5} On March 2, 2023, trial commenced on the parties' pending motions. Trial consisted of seven days conducted on March 2-3, 2023, March 6, 2023, November 27-29, 2023, and December 8, 2023.

{¶ 6} Father testified that he resides with his fiancé, his fiancé's daughter, and J.R.P. He wants to have a relationship with J.R.P. but believes that Mother's actions interfere with that relationship. Specifically, Father is unable to contact J.R.P. during Mother's parenting time. Father has been told that J.R.P. experiences anxiety when he spends time with Father or immediately before Father's parenting time, but Father has not observed any indications of J.R.P. experiencing anxiety. The parenting plan allowed two weeks of vacation time per year, per parent. Father

alleged that Mother strategically used her vacation time in small increments to prevent Father from seeing J.R.P. for long stretches of time.

{¶ 7} John Radcliffe ("Radcliffe") testified that he is a counselor at North Coast Family Foundation and is J.R.P.'s counselor. He began seeing J.R.P. in November 2021. J.R.P. was diagnosed with generalized anxiety disorder. He experienced anticipatory anxiety related to school generally, any extended time away from his home with Mother, and visits with Father. J.R.P. also experienced panic attacks associated with visits with Father. Radcliffe believed the panic attacks were caused by the tension between the two households. J.R.P. reported feeling that he could not assert himself when he did not wish to participate in activities chosen by Father. During their sessions, J.R.P. worked on learning to communicate and to assert himself with Mother, Father, and with peers. J.R.P. also reported excessive yelling by Father, directed at J.R.P. and at other residents of Father's home. J.R.P. would not commit to calling Father twice per week during Mother's parenting time. At the time of the hearing, J.R.P. felt anxiety related to Father and fear related to Father and paternal grandfather. Radcliffe believed that a change of custody could cause J.R.P. to experience anxiety or hardship.

{¶ 8} Mother testified that soon after she purchased a phone for J.R.P. he began to develop anxiety related to calls and text messages from Father during her parenting time. The anxiety intensified with time and reached a point where J.R.P. refused to communicate with Father during Mother's parenting time. Mother made several attempts to increase the frequency of J.R.P.'s communications with Father

during her parenting time. Mother denied that she was attempting to interfere in Father's relationship with J.R.P.

{¶ 9} On November 20, 2023, the GAL filed a second supplemental report and recommendation. The report stated that J.R.P. reported he was no longer experiencing anxiety. J.R.P. also reported to the GAL that he wished to keep the parenting schedule that was in place but eliminate the midweek visit with Father. The GAL's recommendation was to change the midweek parenting time with Father. She also pointed out that the "real issue is the communication between the parents."

{¶ 10} On December 20, 2023, the juvenile court held an in camera interview of J.R.P. The juvenile court later noted in its order that "[t]he Court determined that the child has sufficient reasoning ability to express his wishes and concerns with respect to the allocation of parental rights and responsibilities and therefore considered his wishes and concerns of the child during the in camera interview . . ."

{¶ 11} On December 22, 2024, the juvenile court denied both motions to terminate shared parenting, finding that continuing shared parenting was in J.R.P.'s best interest. Mother was reaffirmed as the residential parent for school purposes. The juvenile court also granted the motions to modify parenting time and visitation. The juvenile court changed the terms of the shared-parenting plan by reducing Father's midweek parenting time, requiring that he give notice for his midweek parenting time, and limiting Father's phone contact during Mother's parenting time. The order also outlined additional guidelines regarding the use of vacation time, including an order that vacation time could not be used in small increments.

{¶ 12} Father's appeal stems from these orders. Father raises two assignments of error for our review:

1. The trial court erred by denying Father's Motion to Terminate Shared Parenting

2. The trial court erred by reducing Father's parenting time and placing restrictions on his time.

## II. Law and Analysis

{¶ 13} We will consider the assignments of error together for ease of analysis. In his first assignment of error, Father contends that the trial court erred when it denied his motion to terminate shared parenting.

{¶ 14} Termination of a shared-parenting decree and plan is governed by R.C. 3109.04(E)(2)(c), which states, in relevant part:

> The court may terminate a prior final shared parenting decree that includes a shared parenting plan . . . upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children.

"[W]hen one or both parents move for termination of the shared-parenting plan, R.C. 3109.04(E)(2)(c) applies and a change-in-circumstances finding is not required." (Citations omitted.) *Bruns v. Green*, 2020-Ohio-4787, ¶ 20.

{¶ 15} In his second assignment of error, Father contends that the trial court erred by reducing Father's parenting time and placing restrictions on his time. Father specifically contends that the trial court abused its discretion when it reduced his midweek parenting time, imposed a requirement that Father provide notification regarding midweek parenting time, and limited his phone contact during Mother's parenting time.

{¶ 16} There appears to be some confusion regarding which statute is applicable to Father's second assignment of error. Mother and Father filed cross-motions to modify the visitation and parenting time. A review of the scant legal authority provided in their appellate briefs suggests their reliance on R.C. 3109.051. However, R.C. 3109.051 addresses parental visitation rights for a noncustodial parent and modification of those rights. The distinction between "visitation" and "custody" has been explained in *In re Gibson*, 61 Ohio St.3d 168, 171 (1991), where the Ohio Supreme Court stated:

> "Visitation" and "custody" are related but distinct legal concepts. "Custody" resides in the party or parties who have the right to ultimate legal and physical control of a child. "Visitation" resides in a noncustodial party and encompasses that party's right to visit the child. *See* former R.C. 3109.05(B) (court may allow "parent who is deprived of the care, custody, and control of the children to visit them * * *"). In other words, "visitation" is granted to someone who does not have "custody." Although a party exercising visitation rights might gain temporary physical control over the child for that purpose, such control does not constitute "custody" because the legal authority to make fundamental decisions about the child's welfare remains with the custodial party and because the child eventually must be returned to the more permanent setting provided by that party. *See Patrick v. Patrick* (1962), 17 Wis. 2d 434, 438, 117 N.W.2d 256, 259 (party having visitation does "not have custody during * * * visits, but only such obligation and authority as are practical necessities during such visits."); *Westrate v. Westrate* (App.1985), 124 Wis. 2d 244, 248, 369 N.W.2d 165, 168 ("visitation differs from custody because the noncustodial parent and child do not live together as a single family unit").

In this case, both Mother and Father are the legal custodians and residential parents of J.R.P. pursuant to the shared-parenting plan. Therefore, R.C. 3109.051 is not applicable because Father's parenting time is not a visitation.

{¶ 17} The modification of terms in a shared-parenting plan is governed by R.C. 3109.04(E)(2)(b), which "authorizes the trial court — on its own initiative or at the request of one or both parents — to modify the terms of the shared-parenting plan when modification is found to be in the best interest of the child." *Bruns*, 2020-Ohio-4787, at ¶ 11, citing R.C. 3109.04(E)(2)(b). *See also Fisher v. Hasenjager*, 2007-Ohio-5589, ¶ 27; *In re N.J.V.*, 2025-Ohio-375, ¶ 27 (8th Dist.). A modification of the terms in a shared-parenting plan pursuant to R.C. 3109.04(E)(2)(b) does not require a showing of a change in circumstances. *In re N.J.V.* at ¶ 24.

{¶ 18} Our standard of review of a trial court's best-interest determination is for an abuse of discretion. *In re N.J.V.* at ¶ 35, *see also Mitchell v. Geiger*, 2025-Ohio-4808, ¶ 11 (10th Dist.). "This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures and attitude." *In re L.S.*, 2003-Ohio-2045, ¶ 12 (8th Dist.), citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 19} As a preliminary matter, we note that it is unclear from the record which subsection outlining best-interest factors was utilized by the juvenile court. R.C. 3109.04(F)(1) sets forth the best-interest factors that the trial court considers when determining whether to terminate a shared-parenting plan pursuant R.C. 3109.04(E)(2)(c) or to modify the terms of a shared-parenting plan pursuant to R.C

3109.04(E)(2)(b). *See In re N.J.V.* at ¶ 34. R.C. 3109.051(D) sets forth the best-interest factors when making a determination pursuant to R.C. 3109.051. It is unclear from the juvenile court's order which of these subsections was considered. Courts have found that because the best-interest factors set forth in the two sections are similar, reliance on the factors in the wrong section is harmless error when the trial court's decision demonstrates consideration of the relevant factors. *In re A.D.*, 2024-Ohio-4793, ¶ 64 (8th Dist.), citing *Bohannon v. Lewis*, 2022-Ohio-2398, ¶ 31 (1st Dist.).

{¶ 20} The best-interest factors pursuant to R.C. 3109.04(F)(1) are as follows:

(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child . . .

(i) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 21} In this case, the juvenile court's order listed the factors that were considered when making the best-interest determination. A review of the listed factors demonstrates that the relevant factors were considered by the juvenile court when making its determination.

{¶ 22} Father asserts that reversal is warranted because Mother intentionally interferes with his parenting time, similar to the mother in *In re S.M.T.*, 2012-Ohio-1745 (8th Dist.). However, we do not agree that this case is similar to *In re S.M.T.*, where the mother of the child was the custodial parent and the evidence overwhelmingly showed she intentionally interfered with the father's visitation rights. Here, the record does not support Father's contention that Mother interferes with his parenting time. The record does reflect that both Mother and Father have engaged in conduct that has caused tension between the households and possibly anxiety for J.R.P.

{¶ 23} A review of the record supports the juvenile court's finding that continuing shared parenting was in J.R.P.'s best interest. Radcliffe, J.R.P.'s therapist, testified that J.R.P. would not commit to calling Father twice per week. In

addition, the GAL indicated that J.R.P. wished to have the custody and parenting time schedule remain as it has been since 2017, with the exception of decreasing Father's midweek parenting time. Lastly, the juvenile court held an in camera interview with J.R.P. and indicated in its court order that his wishes were considered in the court's determination.

**{¶ 24}** For the reasons stated above, we find that the juvenile court did not abuse its discretion when it denied Father's motion to terminate the shared-parenting plan, reduced Father's parenting time, and placed new restrictions on his parenting time. Therefore, Father's assignments of error are overruled and we affirm the juvenile court's orders.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR