NEBLETT, Respondent, vs. NEBLETT, Appellant.

*January 7—February 5, 1957.*

For the appellant there was a brief by *John McLario* and *Charlton, Yanisch & Binzak,* attorneys, and *Earl A. Charlton* of counsel, all of Milwaukee, and oral argument by *Earl A. Charlton* and *Paul Binzak.*

For the respondent there was a brief by *Lines, Spooner & Quarles,* attorneys, and *Maxwell H. Herriott* and *James C. Mallien* of counsel, all of Milwaukee, and oral argument by *Mr. Mallien.*

MARTIN, C. J.   There is no bill of exceptions before us. We must therefore assume that the evidence supports the findings, from which the recited facts are taken.

The parties were married in 1941. Four children were born of the marriage, aged thirteen, eleven, eight, and four years at the time of trial. Commencing in 1942 defendant began a course of "humiliating and berating" conduct toward the plaintiff without cause. In 1949 and 1950 plaintiff committed acts of adultery with another man, and defendant, learning thereof, confronted plaintiff who admitted the infidelity. Defendant thereafter treated her "in an extremely cruel and sadistic manner, beating her with such violence"

as to cause her to flee from their home for a time. Defendant resumed marital relations with the plaintiff, after knowledge of her adultery, from August, 1950, to July, 1952.

In the spring of 1951 defendant committed several acts of adultery with a domestic who had been employed at the home of the parties. Marital relations of the plaintiff with the defendant after she knew of his adultery were not voluntary, but induced by duress, domination, and threats of the defendant.

Defendant contends that under the doctrine of recrimination it was error for the trial court to grant the divorce. The doctrine has no application under the facts here. Sec. 247.10, Stats., provides that no decree of divorce shall be granted if it shall be shown that the plaintiff "has been guilty of adultery not condoned." So far as the plaintiff's adultery was concerned, defendant knew of it and voluntarily resumed relations with her. Unquestionably, his acts constituted condonation. As stated in 17 Am. Jur., Divorce and Separation, p. 256, secs. 208, 209:

> "It is the well-recognized general rule that the continuance or resumption of marital cohabitation after knowledge of the offending spouse's misconduct constitutes a condonation of such misconduct. . . . It is a familiar and well-settled principle that condonation may be implied if the injured spouse, with knowledge of the infidelity of the other, re-establishes the marriage relation with the accused spouse. . . . In cases of adultery, cohabitation is more nearly conclusive of condonation than in cases of cruelty or indignities." See also 27 C. J. S., Divorce, pp. 614, 615, sec. 61.

With respect to the defendant's adultery, however, the finding of the trial court is explicit that it was not condoned by plaintiff but that the resumption of cohabitation after her knowledge of the offense was not voluntary on her part but induced by the "duress, domination, and threats of the defendant."

The findings amply support the judgment of divorce on the ground of cruel and inhuman treatment. The trial court found that "the cruelty of the defendant toward the plaintiff was extreme, vicious, and sadistic in nature" and described many instances of such cruelty with detail unnecessary to relate in this opinion.

Defendant further contends it was error for the trial court to deny him visitation with his children and that the court has no power and authority in a divorce action to require that a party thereto submit to a psychiatric examination.

It is well established that trial courts have inherent jurisdiction to deal with the custody of children in divorce actions. As stated in 17 Am. Jur., Divorce and Separation, p. 512, sec. 674:

"At the present time the statutes generally authorize the court having jurisdiction of divorce proceedings to determine who shall have the care and custody of the children of the marriage; and such right of the court is deemed to be merely a recognition of the original jurisdiction of such courts, and not to confer a new authority or jurisdiction upon them."

The welfare of the child is the controlling consideration of the trial court in determining questions of custody and visitation, and this court has said:

"The trial court is vested with a large discretion in determining what is for the children's best welfare and to whom the custody of the children shall be awarded." *State ex rel. Hannon v. Eisler* (1955), 270 Wis. 469, 479, 71 N. W. (2d) 376.

Under sec. 247.24, Stats., the court has the continuing power to change the custody of children as between the parents, relatives, or others, to prescribe terms and conditions for visitation or deny it altogether, if the interests of the children will be thus served. *Gotz v. Gotz,* ante, p. 472, 80 N. W. (2d) 359.

The court found that "defendant, on numerous occasions, treated the children in a harsh, violent, and unwarranted manner, and imposed a sadistical type of physical punishment upon said children" and threatened harm to them in forcing his domination over the plaintiff. The instances of violent and sadistic treatment of the children by defendant, as set forth in the findings, fully justify the trial court's denial of visitation.

While parental rights are sacred, they are not absolute. 27 Am. Jur., Infants, p. 828, sec. 107; "the probable welfare of the child is the controlling consideration to which all questions of superior legal right are entirely subordinated." p. 829, sec. 108.

The court provided in the judgment:

"Defendant shall not have the care or custody of said children and shall not have any right of visitation with said children unless and until he submits to psychiatric examination by a psychiatrist appointed by the court, and until further court order."

It was no abuse of discretion to so provide. In our opinion, the trial court would have been remiss in its duty to allow visitation without taking precautionary measures of the nature contemplated in the judgment. The primary consideration of the court being the welfare of the children and the findings fully supporting the judgment that defendant have no right of visitation, it is for the defendant, if he desires to visit his children, to show that such visitation will be in their interests.

If in the course of the trial defendant had shown symptoms of a dread communicable disease, there is no question that the court would have the power to order a physical examination of the defendant before determining visitation rights. Where the evidence shows attitudes and behavior of such a cruel and sadistic character as here found by the court, there is likewise no question that it has the power to order a

psychiatric examination of defendant before permitting him to visit his children.

The record shows that the trial court, prior to making its findings, attempted to inform itself of the facts by ordering such an examination of the defendant. When defendant failed to comply with the order, judgment was entered denying visitation. The provision of which defendant complains is no more than a denial of visitation until such time as he makes it possible for the court to make a determination on visitation which it is satisfied will be in the interests of the children.

Finally, it is contended that the judgment awarding plaintiff $55,899.89 should be reduced by $26,000 for the reason that recovery of that amount is barred by the six-year statute of limitations, sec. 330.19, Stats. While the court found that defendant had appropriated $26,000 of plaintiff's money in 1947 and 1948, it does not appear that such amount was included in the computation of the total sum awarded by the judgment.

The trial court found that from August, 1950, through December, 1952, defendant exercised exclusive management and control over plaintiff's income from a family trust as well as her Cadillac automobile and certain jewels and other personal property; and that plaintiff was entitled to an accounting therefor. During that period of time plaintiff's gross income from the trust amounted to well over $120,000. And during that same period, as found by the court, defendant appropriated to his own use the further sum of $32,050 from the proceeds of certain promissory notes which he obtained from plaintiff through coercion. In the absence of a bill of exceptions, which would disclose the evidence on which the court arrived at the sum of $55,899.89, and it being entirely possible that such amount could be arrived at from the sums found to have been intrusted to and appropriated by the defendant without regard to the $26,000 barred

by the statute, we must assume that the amount awarded by the judgment represents only such sums as defendant dealt with between August, 1950, and December, 1952.

*By the Court.*—Judgment affirmed.

STEINLE, J., took no part.