MAROTZ, Plaintiff-Respondent and Cross-Appellant, v. MAROTZ, Defendant-Appellant and Cross-Respondent.

*No. 76–360. Argued October 3, 1977.—Decided November 14, 1977.*
(Also reported in 259 N. W. 2d 524.)

struction business." However, a statute could not be limited to a restricted class of those so engaged. *Kallas, supra*, p. 391.

478

480

For the appellant there were briefs by *Joseph F. Owens* and *Murphy, Stolper, Brewster & Desmond, S. C.* and oral argument by *Mr. Owens,* all of Madison.

For the respondent there was a brief by *David J. Lukas, Jeffrey L. Huttenburg* and *Law Offices of David J. Lukas,* with oral argument by *Messrs. Lukas and Huttenburg,* of Wisconsin Rapids.

HANLEY, J. The following issues are presented on this appeal:

1. Did the trial court abuse its discretion at the June 15, 1976 hearing when it refused to vacate the May 5, 1976 custody transferring order?

2. Did the trial court err in admitting evidence of the mother's attempts to frustrate the father's visitation

privileges at the full custody hearing of October 7 and 8, 1976?

3. Did the trial court err in granting custody to the father at the October 7 and 8, 1976 hearing?

4. Did the trial court err in not granting custody to the mother at the December 12, 1976 hearing because of the father's altered capacity to provide for the child?

5. Did the court err in not altering the mother's visitation rights?

*Abuse of Discretion*

The appellant claims the trial court abused its discretion when, after the hearing on June 15, the court refused to vacate the order of May 5. The May 5 decision and order, rendered after a brief default hearing in the absence of the mother, resulted in a transfer of the child's custody from the mother to the father. The mother failed to appear, in person or by counsel, at the hearing due to the fact that she allegedly had not been informed of the rescheduled date until five days before the hearing. The trial court nevertheless proceeded and heard testimony from the father and other witnesses concerning the mother's attempts to frustrate the father's visitation privileges, and the father's ability to provide for his son.

At the June 15 hearing, the mother and her parents testified in detail concerning her ignorance of the May 4 hearing date until she received notification shortly before, her attempts through her parents to obtain representation, and the difficulties of finding someone to care for her other children.

The result of this hearing was the order granting judgment, dated July 28, 1976, which stated:

"IT IS ORDERED that Judgment on the instant motion be and hereby is entered in favor of the defendant that the May 4, 1976 custody hearing in the above-

entitled action did not constitute a full scale inquiry as to the best interests of the child, CHAD ERIC MAROTZ."

It is clear from the court's comments at the conclusion of the July 15 hearing that it viewed the question of vacating the May 4 amended judgment moot because the May 4 hearing did not constitute a full scale inquiry as to the best interests of the child. The mother, however, contends that the fact that the court proceeding at all constituted reversible error in that the resulting transfer of custody prejudiced her standing to bring jurisdictional objections with respect to the hearing, and that the change of custody cast upon her the burden of initiating subsequent proceedings to regain custody of Chad. The mother also contends that the return of Chad to his father cast an unfavorable burden of proof onto her.

Sec. 269.46(1), Stats. (1973) permits a trial court to relieve a party from a judgment, order or stipulation by reason of mistake, inadvertence, surprise or excusable neglect. Granting such relief, however, is in the trial court's discretion and, on appeal, this court will not reverse the trial court's decision unless there has been a clear abuse of this discretion. *Amidzich v. Charter Oak Fire Insurance Co.*, 44 Wis.2d 45, 54, 170 N.W.2d 813 (1969).

The trial court in this instance did not abuse its discretion for several reasons. First, the May 4 hearing did not constitute the full custody hearing which is required when the issue of custody is first determined. While such a full custody hearing will normally take place during the divorce proceeding itself, the custody of a minor child of the parties to a divorce action may initially be granted pursuant to stipulation. If a contest for custody develops after it has been initially granted

to one of the parties by stipulation, the court is then required to conduct a full-scale custody hearing, with psychological studies of the parties and children if necessary, in the redetermination of custody. *Freye v. Freye,* 56 Wis.2d 193, 196–97, 201 N.W.2d 504 (1972). The approval of a custody stipulation itself does not necessarily involve an evaluation of both parents to determine in whose custody the child's best interests are promoted; rather, the award of custody upon stipulation is usually based merely on the determination that the party to whom custody is stipulated is capable of caring for the child. *Freye v. Freye, supra* at 196–97.

In this instance, vacating the May 5 custody transfer order would not serve any purpose with respect to the ultimate determination of who should receive custody. As the trial court stated, a full-scale hearing had not been held and a hearing was necessary now that the issue of custody had arisen. Before the court could proceed to make any final determination of custody, it was necessary that a full-scale hearing be held. The court's order was therefore proper in this respect.

Second, the position of the mother was not prejudiced by the denial to vacate the May 5 amendment. The mother did not lose standing to assert jurisdictional objections to the May 4 hearing because there were none to assert. The May 4 hearing took place before the effective date of the Uniform Child Custody Act (May 28, 1976), and consequently the jurisdictional provisions of the act were not applicable. 1975 Wis. Laws, ch. 283. What was applicable, however, was that case law in which this court has stated that the court granting a judgment of divorce has continuing subject matter jurisdiction over a subsequent redetermination of custody even though the custodian and child have removed from this state. *Jones v. Jones,* 54 Wis.2d 41, 194 N.W.2d 627 (1972) ; *Block v. Block,* 15 Wis.2d 291,

112 N.W.2d 923 (1961) ; *Anderson v. Anderson,* 8 Wis.2d 133, 98 N.W.2d 434 (1959).

Third, the trial court's refusal to vacate the custody transferring order of May 5 did not jeopardize her position by shifting to her any additional burden of proof. The mother has confused the burden of proof applicable to full-scale custody hearings with that applicable to redetermination hearings. In the former, all parties seeking the custody of minor children have an equal burden of proving that the best interests of the child will be promoted by granting custody to them. *Freye v. Freye, supra* at 197. In this instance, the trial court does not necessarily determine that all but one of the parties are unfit to take custody of the children, but rather with what party the child's welfare will best be promoted. In the latter, however, the party seeking a change in custody must demonstrate not only fitness to care for the child, but a material change in the custody arrangements which theretofore had existed. *Severson v. Severson,* 71 Wis.2d 382, 386, 238 N.W.2d 116 (1975). In the instant case, the burden of the mother at the full-scale hearing which the court ordered to be held was no different from what her burden would have been had the full-scale hearing properly been held when the child's custody was transferred in May.

*Propriety of Evidence*

The mother also contends that the admission of evidence concerning her past attempts to frustrate the father's visitation privileges while the child was in her custody was both improper and irrelevant to a determination of the child's best interests. To support this contention, the mother cites cases wherein this court has held that children are not to be taken from a custodial parent as a penalty for improper conduct nor given to a custody-seeking parent as a reward for good

conduct. *Pfeifer v. Pfeifer,* 62 Wis.2d 417, 423, 215 N.W.2d 419 (1974); *Dees v. Dees,* 41 Wis.2d 435, 442, 164 N.W.2d 282 (1969).

However, in a full-scale hearing all of the facts and circumstances bearing on the future life of the child should be considered by the court in determining in whose custody that child's welfare will best be promoted. The infant child of divorced parents is not a pawn to be buffeted about by the parents in the assertion of their rights, but rather is a helpless person whose interests must be protected and promoted by the courts. It is a fundamental principle in this state that visitation privileges, like custodial rights, are created to promote the best interests of the child. *Nebleff v. Nebleff,* 274 Wis. 574, 571, 81 N.W.2d 61 (1957). As we stated in *Patrick v. Patrick,* 17 Wis.2d 434, 439, 117 N.W.2d 256 (1962):

"Minor children are entitled to the love and companionship of both parents insofar as this is possible and consistent with their welfare."

For this reason, visitation privileges granted to the non-custodial parent must not be viewed merely as a privilege of that parent, but as a right of the child which is not to be subverted by the custodian.

In this respect, therefore, the admission of evidence concerning the mother's attempts to frustrate the father's visitation privileges was proper in determining in whose custody that child's welfare would best be promoted. While this evidence should not be determinative of the issue of the child's best interest, it is not inconsistent with this determination.

*Alleged Error at the October 7–8, 1976 Hearing*

The mother contends that the trial court erred in granting custody of Chad to the father after the October

7–8 full-scale custody hearing on the grounds that this determination was against the great weight and clear preponderance of the evidence.

Here, the trial court made the following findings at the October 7–8 hearing:

"6. That both parties are fit parents and, in addition thereto, are both very capable of providing for and caring for said child.

"7. That the defendant, Marilyn K. Marotz, has in the past frustrated visitation rights of the plaintiff, Donald M. Marotz, and, by her move to the State of Colorado without permission of this Court, made the visitation rights of the plaintiff so inconvenient as to be unreasonable.

"8. That the defendant, Marilyn K. Marotz, has shown this Court no good reason or motivation for moving to Colorado and, under the circumstances, the best interest of the child would not be served by allowing the removal of the child by her to Colorado on a permanent basis.

"9. That the best interest of said child, Chad Eric, would be served by this Court's amendment of the original judgment of divorce to provide for the transfer of custody to the plaintiff, Donald M. Marotz, subject to rights of visitation of the defendant, Marilyn K. Marotz."

From the above findings we are not satisfied that the trial court gave enough detailed consideration to the question of what was in the best interests of the child. While we have stated that this is a proper consideration in making such a determination, we believe the trial court placed undue emphasis on the enforcement of the visitation rights.

A trial court should particularize the respects in which it concludes that placement with a party is in the best interests of the child. We therefore remand the cause for further proceedings and direct the trial court to consider the custody issue in terms of the present circumstances.

In this case the guardian ad litem, Duane H. Polivka, inquired of the court as to what his duty and responsibility was on appeal.

In *Allen v. Allen,* 78 Wis.2d 263, 267–68, 254 N.W.2d 244 (1977), this court stated:

"The guardian ad litem serves a twofold purpose. He acts as an advocate and legal representative to protect and advance the best interests of the children. In such capacity, he possesses all the rights, powers and obligations normally accorded to a legal advocate in a trial setting."

These rights, powers and obligations do not terminate at the trial level but continue on appeal. Their proper performance requires the guardian ad litem to communicate his position to this court. Such communication may be made by letter, filing of a brief or by personal appearance if deemed necessary.

Since the cause is remanded for further proceedings, we do not reach the remaining issues.

*By the Court.*—The May 5, 1976 order amending judgment of divorce is affirmed; the October 18, 1976 order amending judgment of divorce is reversed and cause remanded for further proceedings not inconsistent with this opinion.