Howard V. EGAN, Jr., Petitioner and Appellee,

v.

D. M. G., a Child, Robert C. Heinley, Guardian ad Litem of Said Child, and R. L. G., Respondents and Appellees,

and

J. L. R. and D. J. B., Respondents and Appellants.

Civ. No. 9927.

Supreme Court of North Dakota.

March 18, 1982.

Thomas Disselhorst, Bismarck, for appellants; argued by Disselhorst.

Baer & Asbridge, Bismarck, for appellee R. L. G.; argued by Richard B. Baer, Bismarck.

ERICKSTAD, Chief Justice.

The petitioners, J. L. R. and D. J. B. (hereinafter respectively referred to by the fictitious names of John and Darlene) have filed an appeal from a judgment of the District Court of Foster County, dated December 5, 1980. John and Darlene also filed an appeal from an order of the district court, dated August 9, 1980, dismissing their request for a writ of habeas corpus, but that appeal was dismissed by this Court in *J. L. R. v. R. L. G.*, 311 N.W.2d 191 (N.D.1981).

In its judgment of December 5, 1980, the district court determined that the respondent R. L. G. (hereinafter referred to by the fictitious name of Rodney) is the natural father of the minor child D. M. G. (hereinafter referred to by the fictitious name of Debbie); that Debbie is a deprived child; and that in Debbie's best interest she should be placed in Rodney's custody. We reverse the court's determination that Debbie is a deprived child, but we affirm the court's determinations that Rodney is Debbie's nat-

ural father and that she should be placed in his custody. We also remand for disposition of the matter of visitation between Darlene and Debbie.

During September, 1976, Darlene and Rodney traveled from North Dakota to the State of Washington. They were accompanied by Darlene's infant daughter who was born out of wedlock in 1974. At the time of their travel to Washington Darlene was pregnant, and on October 12, 1976, she gave birth to Debbie, also out of wedlock.

Shortly after Debbie's birth, Darlene left Rodney and began traveling with a Mr. Baskin (a fictitious name) to whom she was subsequently married. During the period of time that Darlene was with Mr. Baskin, Rodney had physical custody of Debbie. Approximately one and one-half years after leaving Rodney, Darlene left Mr. Baskin and returned to Washington where she once again lived with Rodney for a time. During this period John moved into an apartment in the same building as and near to Rodney's apartment. The record is unclear as to exactly when Darlene and John met and became acquainted. Nevertheless, during September, 1978, Darlene left Rodney and began living with John. During November, 1978, Rodney moved to Carrington, North Dakota, with Debbie.

On February 12, 1979, John filed a petition for writ of habeas corpus with the District Court of Foster County, asserting that he was Debbie's natural father and that Debbie was wrongfully being held in custody by Rodney. Darlene subsequently joined in John's petition. The district court, as a result of John having filed the habeas corpus petition, temporarily placed Debbie in the custody of the Foster County Social Service Board.[1] John and Rodney each claimed to be Debbie's natural father. John and Darlene sought to have the court place custody of Debbie with them while Rodney requested the court to give him custody of Debbie. On August 19, 1980,

---

1. At no time did any of the parties appeal from or otherwise object to the court's temporary placement of Debbie in the custody of the Foster County Social Service Board. Consequent-

ly, we make no determination as to the court's authority in making this temporary custody placement.

Howard V. Egan, Jr., a juvenile supervisor residing at Jamestown, North Dakota, filed a petition with the Juvenile Court of Foster County requesting the court to make a determination that Debbie was a deprived child.

Evidentiary hearings were held on October 3, 1980, and on November 12, 1980, regarding these matters.[2] On November 26, 1980, the District Court of Foster County entered its findings of fact, conclusions of law, and order for judgment wherein the court determined that Rodney is Debbie's natural father, that Debbie is a deprived child, and that it is in Debbie's best interests that she be placed in Rodney's custody. Judgment was entered accordingly on December 5, 1980.

On appeal from the December 5, 1980, judgment John and Darlene assert that the district court erred in its determination that in Debbie's best interests she should be placed in Rodney's custody rather than with Debbie's mother, Darlene. John and Darlene request this Court to reverse the district court's custody decision and to place Debbie in Darlene's custody. In the alternative, John and Darlene request that, if this Court affirms the district court's custody determination, Darlene be awarded reasonable visitation rights with Debbie. The following issues have been raised:

(1) Whether or not the court erred in allowing an attorney who had previously represented Rodney to act as the state's attorney representing Howard Egan, the party petitioning the Court to determine Debbie to be a deprived child;

(2) Whether or not the court erred in its determination that Rodney, and not John, is the natural father of Debbie;

(3) Whether or not the court erred in its determination that Debbie is a deprived child;

(4) Whether or not the court erred in its determination to place Debbie in Rodney's custody; and

(5) Whether or not the court erred in its failure to grant Darlene reasonable visitation rights with Debbie.

■ Michael Williams represented John and Darlene at the October 3, 1980, hearing at which time he objected to having Fabian Noack, as state's attorney, represent Howard Egan because Mr. Noack had previously represented Rodney. Following some discussion on the objection the court proposed a solution to which Mr. Williams responded that he had no objection:

"THE COURT: Well, would you all agree to take some testimony here on matters that would pertain to these two hearings, the Juvenile Petition and the motion you have and use that testimony with reference to the final hearing in the matter when somebody could represent the State's Attorney here properly and handle that? Do you want to take some testimony, put it on the record so somebody won't have to come back?

"MR. WILLIAMS: I have no objection to taking testimony today, Your Honor."

Following another short discussion the following exchange occurred:

"MR. NOACK: Your Honor, if no one objects I will sit at counsel table. I will not participate in any manner. But I may take notes in the event an Assistant State's Attorney becomes involved in this case later on.

"THE COURT: Yes.

"MR. NOACK: Is that permissable?

"MR. WILLIAMS: I have no objection."

2. Section 27–20–24, N.D.C.C., provides that hearings under Chapter 27–20, N.D.C.C., are to be conducted by the court separately from other proceedings not included in Section 27–20–03, N.D.C.C. Nevertheless, combined hearings were held in this case with regard to the deprivation determination, the paternity determination, and the award of custody. No party objected to combining these matters nor have the combined hearings been challenged on appeal.

See, footnote 1 in *J. L. R. v. Kidder County Social Service Board*, 295 N.W.2d 401 (N.D. 1980). We note that with regard to the court's paternity determination, and its custody determination in conjunction therewith, the district court had authority to act under the Uniform Parentage Act, Chapter 14–17, N.D.C.C., and in so acting the court was sitting as the district court and not as the juvenile court.

Upon reviewing the record, including the foregoing excerpts, we conclude that John and Darlene did not preserve any error for review on appeal with regard to Mr. Noack's representation of Howard Egan. Mr. Williams, representing John and Darlene, agreed to proceed with the hearing on the terms proposed by the court and by Mr. Noack. Consequently, John and Darlene have not preserved an objection to Mr. Noack's representation of Mr. Egan upon which they can assert prejudicial error on this appeal.

■ John and Rodney each claimed to be Debbie's natural father. The district court made a finding of fact that Rodney is Debbie's natural father. Both men submitted to blood tests, and the results were admitted into evidence. Rodney's test showed a 98.468% plausibility that he is Debbie's natural father. John's test showed a 0.000% plausibility of his being Debbie's natural father. In addition to the blood tests John and Rodney entered a stipulation, signed by counsel, stating that Rodney, and not John, is Debbie's natural father. Based upon the record before us we conclude that the district court's finding that Rodney is Debbie's natural father is not clearly ·erroneous. Rule 52(a), N.D.R.Civ.P.

■ The district court, sitting as the juvenile court, determined that Debbie is a deprived child. John and Darlene assert that the court erred in that determination. Our scope of review in an appeal from a juvenile court determination that a child is deprived is comparable to a trial de novo; although we give appreciable weight to the findings of the juvenile court we are not bound by the clearly erroneous standard of Rule 52(a), N.D.R.Civ.P. *J. L. R. v. Kidder County Social Service Board*, 295 N.W.2d 401 (N.D.1980).

Subsection 27–20–02(5), N.D.C.C., defines a deprived child:

"5. 'Deprived child' means a child who:
   a. Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for one child's physical, mental, or emotional health, or morals, and

the deprivation is not due primarily to the lack of financial means of one child's parents, guardian, or other custodian;
   b. Has been placed for care or adoption in violation of law; or
   c. Has been abandoned by one child's parents, guardian, or other custodian."

In this regard the trial court entered the following pertinent finding of fact:

"4. That the child, while in the custody of its natural mother, [Darlene], was a deprived child and after the child was returned to the State of North Dakota by [Rodney], the child remained a deprived child and was ordered into the care, custody and control of the Foster County Social Services in March of 1979."

■ Upon reviewing the record we conclude that there is no testimony or other evidence which demonstrates that Debbie, at any time, was without proper parental care or control necessary for her physical and mental well being or that she was otherwise a deprived child within the context of Chapter 27–20, N.D.C.C. The record reveals that except for the first few weeks of Debbie's life she had lived with her father, Rodney, until the court placed her in foster care. The record is devoid of any evidence that during this period of time Debbie was without proper care.

The trial court refers to the related case of *J. L. R. v. Kidder County Social Service Board*, 295 N.W.2d 401 (N.D.1980), in support of its finding that Debbie is a deprived child. In *Kidder County, supra*, this Court upheld a determination that another child born to Darlene out of wedlock was a deprived child. That child had been left to reside with her maternal grandmother most of her life without either parent providing care or support. Furthermore, the record in *Kidder County, supra*, established that the child had been without proper parental care prior to residing with her grandmother. The record in this case involving Debbie is distinguishable. Until the court temporarily placed Debbie in foster care she was in the custody and control of her fa-

ther, Rodney, except for the first few weeks of her life. Although the record contains some evidence that Rodney lacked certain parenting skills and that Rodney had previously had some problems caused by drinking it contains no evidence that Debbie, while residing with Rodney, received less than the "minimum standards of care which the community will tolerate" such that she was a deprived child under Chapter 27–20, N.D.C.C. *I.e. In the Interest of S. W.*, 290 N.W.2d 675, 677 (N.D. 1980).

We conclude that the record in this case contains insufficient evidence to establish that Debbie is or has ever been a deprived child. Accordingly, we set aside the court's determination that Debbie is a deprived child.

■ The district court established that Rodney is Debbie's natural father by its authority under the Uniform Parentage Act, Chapter 14–17, N.D.C.C. Pursuant to Section 14–17–14(3), N.D.C.C., of that Act the court's judgment may contain, among other things, a provision concerning the custody of the child, and pursuant to Section 14–17–17, N.D.C.C., the court has continuing jurisdiction to modify or revoke such provision. Upon making its paternity determination the court placed Debbie in Rodney's custody. John and Darlene assert that the court erred in its custody determination and that Debbie should have been placed in Darlene's custody.

The court's finding that it was in Debbie's best interests that she be placed in Rodney's custody is a finding of fact which will not be set aside by this Court on appeal unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P. Upon reviewing the record in this case we conclude that the court's finding in this regard is not clearly erroneous, but rather that it is supported by substantial evidence.

Darlene and Rodney each introduced evidence of being capable of providing proper parental care for Debbie. More significantly, however, until Debbie was placed by the court in foster care during March, 1979, she had been in Rodney's actual custody during

her 2½ years of life with the exception of the first few weeks after her birth when she was with Darlene. During that time Rodney was the sole parent who provided for her care and financial support. During Debbie's temporary stay in foster care, Rodney has maintained constant contact with her, and, in addition to that, he has attended classes and otherwise worked with the Foster County Social Services Department toward developing his parenting skills. Neither prior to Debbie's placement with foster care nor subsequent to that placement has Darlene maintained substantial contacts with Debbie. Debbie was more than two years old before Darlene sought custody of Debbie from Rodney through the courts, and the record fails to establish that Darlene, prior to that time, made any significant effort to communicate with or otherwise maintain contact with Debbie.

This Court has often stressed that continuity in a child's life, especially a young child, is one of the most important factors in determining what custody placement is in the best interests of the child. *In the Interest [Custody] of D. G.*, 246 N.W.2d 892 (N.D.1976); *Borg v. Anderson*, 73 N.D. 95, 11 N.W.2d 121 (1943). Rodney has been exclusively the parent from whom Debbie has received her care and support and with whom she has enjoyed a personal ongoing parent-child relationship. Consequently, we conclude that the district court's finding that it is in Debbie's best interests that she be placed in Rodney's custody is not clearly erroneous.

John and Darlene assert in the alternative that, if the trial court did not commit error in placing Debbie in Rodney's custody, the court did commit error in failing to grant Darlene reasonable visitation rights with Debbie.

This court has recognized that the noncustodial parent has a right to visitation privileges which, as a corresponding right of the child, should be granted to promote the best interests of the child. *Gardebring v. Rizzo*, 269 N.W.2d 104 (N.D.1978). This Court has also recognized that denial of a parent's visitation rights should occur only

when it is in the best interests of the child to not have visitations with the non-custodial parent. *C. B. D. v. W. E. B.*, 298 N.W.2d 493 (N.D.1980). Although the trial court made no provision for visitations between Darlene and Debbie it made no finding that it would be in Debbie's best interest to not have visitations with Darlene. Thus, we conclude that it is necessary to remand to the district court for disposition of this matter.

In accordance with this opinion the district court's judgment, dated December 5, 1980, is reversed insofar as it decrees that Debbie is a deprived child; is reversed insofar as it contains no disposition regarding visitation between Darlene and Debbie; and is affirmed in all other respects. We remand this case to the district court for disposition of the matter involving visitation between Darlene and Debbie.

JUDGMENT REVERSED IN PART, AFFIRMED IN PART, AND REMANDED WITH INSTRUCTIONS.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.