2002 ND 69

**Weston L. BERG, Plaintiff and Appellant,**

v.

**Brenda M. BERG, Defendant and Appellee.**

**No. 20000355.**

Supreme Court of North Dakota.

April 18, 2002.

William D. Schmidt, Schmitz, Moench & Schmidt, Bismarck, N.D., for plaintiff and appellant.

Leslie Bakken Oliver, Vogel Law Firm, Bismarck, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Weston Berg appealed from an order amending an original divorce decree, following this Court's remand on a prior appeal. We hold the trial court's findings of fact, as supplemented, are not clearly erroneous and they support the court's award of unsupervised visitation to Brenda Berg. We hold the court's directive that Weston Berg pay for the children's health insurance coverage is not in accordance with our statutory law. We further hold the trial court did not abuse its discretion in its award of attorney fees to Weston Berg for the prior appeal. The order amending the divorce decree is affirmed in part, reversed in part, and the case is remanded to the trial court with instructions to amend its order to direct Brenda Berg to pay for healthcare insurance for the children. Weston Berg's request for attorney fees on this appeal is remanded to the trial court for consideration.

## I. Facts

[¶ 2] Weston and Brenda Berg were married in 1990 and have two children of their marriage. A judgment was entered by the district court on January 22, 1999 dissolving the marriage, from which Weston Berg appealed. Many facts relevant to this case are set forth in this Court's decision resolving the prior appeal in *Berg v. Berg*, 2000 ND 36, 606 N.W.2d 895 (*Berg I*), and will not be reiterated here except as necessary to explain the resolution of the issues in this appeal. In *Berg I*, this Court affirmed the divorce decree in part and remanded the case to the trial court for further proceedings to address the issues of visitation for Brenda Berg and the providing of healthcare insurance for the children. After a hearing, the district court entered supplemental findings and amended the original divorce judgment.

## II. Visitation

[¶ 3] In the original divorce judgment the trial court awarded custody of the two children to Weston Berg, after finding that Brenda Berg perpetrated domestic violence during the marriage. The court awarded Brenda Berg unsupervised visitation with the children and Weston Berg appealed from that part of the divorce

decree. In *Berg I,* this Court reversed the award of unsupervised visitation and remanded for additional findings, explaining:

> When the court finds domestic violence has occurred, there is a presumption only supervised visitation will be allowed:
>
>> If the court finds that a parent has perpetrated domestic violence and that parent does not have custody, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, the court shall allow only supervised child visitation with that parent unless there is a showing by clear and convincing evidence that unsupervised visitation would not endanger the child's physical or emotional health.
>
> N.D.C.C. § 14–05–22(3).
>
> . . . .
>
> The trial court does not outline any clear and convincing evidence presented by Brenda Berg, nor does the court set forth the factors it considered in reaching its conclusion. . . .
>
> The trial court's findings must be sufficiently specific and detailed to apprise a reviewing court of the reasoning and rationale for the decision. . . .
>
> We reverse the award of unsupervised visitation and remand for additional findings.

*Berg,* 2000 ND 36, ¶¶ 8–11, 606 N.W.2d 895.

■ [¶ 4] Upon remand, the district court entered supplemental findings of fact and continued its directive allowing Brenda Berg unsupervised visitation with the children. On this appeal, Weston Berg asserts the trial court's award of unsupervised visitation to Brenda Berg is clearly erroneous. The trial court's decision on visitation is a finding of fact that will not be reversed on appeal unless it is clearly erroneous. *Kluck v. Kluck,* 1997 ND 41, ¶ 24, 561 N.W.2d 263. A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *Schiff v. Schiff,* 2000 ND 113, ¶ 10, 611 N.W.2d 191.

■ [¶ 5] The trial court made the following findings of fact relevant to the visitation issue:

> [Brenda Berg] has received 22½ hours of professional therapeutic counseling, therein addressing [Brenda Berg's] inappropriate conduct towards [Weston Berg] and towards the minor children. . . . [S]ubsequent to [Brenda Berg's] therapeutic treatment plan, she has not engaged in nor exemplified the unmanaged anger and impulsive behavior demonstrated prior to the parties' separation.
>
> [Brenda Berg] has engaged in unsupervised visitation with the minor children, the same consistent with the stipulated interim order of the parties, and further that [Brenda Berg] has been observed by a mental health professional during 15½ hours of interaction between [Brenda Berg] and the minor children, and that said observations did not disclose nor identify any outbursts of unmanaged anger nor impulsive behavior on the part of [Brenda Berg].
>
> [I]n the absence of confrontational arguments between [Weston Berg] and [Brenda Berg], [Brenda Berg] has exhibited genuine love, concern and parental ability to meet the needs of the minor children.

[T]he confrontational arguments of [Weston Berg] and [Brenda Berg] centered upon finances, place of residence and [Weston Berg's] interest in farming, all of which have been removed by virtue of the separation of the parties during the course of this litigation, and that said separation together with the professional therapeutic counseling and treatment of [Brenda Berg] have prevented any further abusive incidents.

. . . .

[U]pon all evidence presented in the course of trial herein, the Court finds that the foregoing constitutes clear and convincing evidence that [Brenda Berg] has received the necessary professional therapeutic counseling and treatment so as to correct her impulsive conduct and unmanaged anger, and that there is no longer a risk of harm to the minor children of the parties necessitating supervised visitation.

[¶ 6] We conclude the trial court's findings of fact are supported by the record and are not clearly erroneous. The evidence shows that Brenda Berg has had a long period of unsupervised visitations with the children without incident or harm to them. The evidence also shows that Brenda Berg has received counseling for her previously uncontrolled anger and behavior and that she has been successful in rehabilitating herself.

[¶ 7] Karen Mueller, a social worker with a masters degree, has provided therapy for Brenda Berg since December 1996. She diagnosed Brenda Berg as having had adjustment disorder with mixed disturbance of emotions and conduct. Weston Berg complained that Brenda Berg presented herself to this therapist and received counseling as merely the victim of abuse and not as the perpetrator of domestic violence. The evidence belies that assertion. Mueller testified Brenda Berg made admissions to her about her own improper conduct in the marriage, stating "she told me about that situation where she . . . was sitting in the back seat and she reached around and I believe knocked Weston's glasses off. She talked about her in arguments swearing, yelling, that kind of conduct." Mueller testified that she made Brenda Berg understand she needed to look at herself and her role in causing a deterioration of the marriage and to understand her behavior. Mueller testified that through therapy Brenda Berg has "learned a ton about stress management." Mueller's conclusions are more fully explained in her summary notes of therapy sessions between December 16, 1996 and March 16, 1998:

Brenda has learned a great deal about managing stress in her life. I believe she will need to continue to employ those techniques. Besides the psychotherapy, Brenda is also medically addressing the depression. . . .

I believe I have come to a secure understanding of Brenda by sitting with her through twenty-one (21) hours of therapy. I also believe that in the future, she will not resort to using the primitive neurotic defenses, i.e., yelling and swearing, that she used in the past.

[¶ 8] James Davis, a clinical social worker, did an extensive custody evaluation between Brenda Berg and the children during the pendency of the divorce proceedings. In his report, filed with the district court on May 18, 1998, Davis states in relevant part:

I spent eleven and one-half (11.5) hours with Brenda Berg and her children in both public as well as private settings. In all venues, Brenda Berg was able to exercise appropriate parental control. . . .

Kate Berg articulated to her father that she was wanting to spend only one day

with her father and "100 with mom".... I do not interpret Kate's statement to her father as being evidence of either parental alienation on the part of Brenda Berg or a lack of affection for her father on the part of Kate Berg; rather, I believe what we have here is a glimpse into the psyche of a small child who is expressing a need for stability with the person she perceives as her primary parent, Mrs. Brenda Berg.

Even though the district court rejected Davis's recommendation that Brenda Berg be granted custody of the children, the court could certainly consider Davis's expert opinion and findings as relevant to the question whether unsupervised visitation by Brenda Berg would endanger the children's physical or emotional health.

 [¶ 9] The primary purpose of visitation is to promote the best interests of the children, not the wishes of the parents. *Stoppler v. Stoppler*, 2001 ND 148, ¶ 14, 633 N.W.2d 142. Not only is visitation presumed to be in the best interest of the child, it is a right of the child. *Id.* Furthermore, a noncustodial parent can be deprived of visitation only if visitation is likely to endanger the child's physical or emotional needs. Section 14–05–22(2), N.D.C.C.; *Ackerman v. Ackerman*, 1999 ND 135, ¶ 13, 596 N.W.2d 332.[1] Section 14–05–22(3), N.D.C.C., does not alter, but rather recognizes these principles. The evidence reveals that, after many unsupervised visits between Brenda Berg and her children, these children have benefitted by the relationship with their mother. There is no evidence they have suffered either physical or emotional harm as a result of the unsupervised visitations. We conclude the trial court's finding there is clear and

convincing evidence unsupervised visitation by Brenda Berg with her children will not endanger the children's physical or emotional health is not clearly erroneous. We further conclude the trial court's findings of fact on this issue, as supplemented on remand, are supported by the evidence and are sufficiently specific in detail to apprise this Court of the trial court's reasoning and rationale in awarding unsupervised visitation.

## III. Health Insurance

[¶ 10] In the original divorce decree the district court ordered Brenda Berg to provide for the children's health insurance coverage "only if such coverage was available through her employer at a cost of less than five percent of her income." *Berg*, 2000 ND 36, ¶ 12, 606 N.W.2d 895. We reversed this directive, explaining that it was not in accord with our statutory requirements:

> Under N.D.C.C. § 14–09–08.10, every child support order entered in this state must address health insurance coverage for the child....

This statute essentially creates a three-step process for determining who should be responsible for health insurance coverage. First, the custodial parent must be ordered to secure coverage if it is "available at no or nominal cost." N.D.C.C. § 14–09–08.10(2). If not, N.D.C.C. § 14–09–08.10(1) requires the noncustodial parent to provide coverage if it is "available at reasonable cost or becomes available at reasonable cost." If neither subsection is applicable, the trial court has discretion to make other

---

1. The special concurrence appears to blur the distinction between the right to visitation with the structure of that visitation. However, we assume the special concurrence does not intend the right of the noncustodial parent to

visitation to be used to force a court to structure the visitation according to the sole wishes of the noncustodial parent even though those wishes may be contrary to the best interests of the child.

provisions for the child's health insurance or health care costs.

. . . .

In N.D.C.C. § 14–09–08.15, the legislature has defined "reasonable cost" of health insurance in child support orders:

For purposes of this chapter, health insurance is considered reasonable in cost if it is available to the obligor on a group basis or through an employer or union, regardless of service delivery mechanism.

The legislature has thus statutorily determined health insurance available through an employer, union, or group plan is "reasonable in cost." By requiring Brenda Berg to be responsible for the children's health insurance premiums only if available through her employer at a "reasonable cost" not to exceed five percent of her income, the court has imposed a restriction contrary to the statutory definition. Accordingly, we reverse the judgment provision regarding health insurance coverage and direct the court upon remand to order health insurance coverage for the children in accordance with the statutes and this opinion.

*Berg*, at ¶¶ 13, 15.

[¶ 11] Upon remand, the district court entered the following relevant supplemental findings of fact:

[Brenda Berg], as obligor and noncustodial parent, is employed less than full time as a registered nurse, and as a part-time employee does not have medical insurance benefits through her employment.

. . . .

[Weston Berg] does have available to him and has maintained medical insurance coverage which has included the minor children of the parties.

Upon the foregoing, it is the order of the Court that [Brenda Berg] shall provide satisfactory health insurance coverage for the minor children when said coverage is available by and through [her] employment at a reasonable cost. Until the same shall be available to [Brenda Berg], [Weston Berg] shall continue his health insurance coverage for said minor children.

A

[¶ 12] On appeal Weston Berg asserts the trial court's findings on this issue are clearly erroneous and its order does not comport with the statutory requirements. We agree.

[¶ 13] It is undisputed that Weston Berg does not have health insurance "available at no or nominal cost." The district court found that Brenda Berg, as a part-time employee, does not have medical insurance benefits available to her through her employer. That finding is clearly erroneous and is not supported by the evidence.

[¶ 14] In an order to show cause hearing on May 18, 1999, Brenda Berg testified she had health insurance benefits available to her under a family plan which would cover the children. In a 1999 post-hearing brief, Brenda Berg stated that, as part of her employee benefits, health insurance is available to her, including coverage for the two children, at a cost of approximately $222.41 per month. Brenda Berg has failed to direct this Court to evidence in the record refuting the foregoing evidence that she has health insurance coverage for the children available to her through her employer.

[¶ 15] Furthermore, the statute does not restrict the requirement that Brenda Berg, as noncustodial parent, pay for the children's health insurance to instances when it is available to her through her

employment. Under N.D.C.C. § 14–09–08.15, Brenda Berg is deemed to have health insurance available to her for the children at reasonable cost if such insurance is available to her "on a group basis or through an employer or union, regardless of service delivery mechanism." There is no evidence demonstrating health insurance is not available to Brenda Berg on a group basis or through her employer. We, therefore, conclude the district court's findings on this issue are clearly erroneous. We reverse the court's order on this issue and remand with instructions the court enter an order requiring Brenda Berg to furnish health insurance coverage for the children. If that order results in a reduction of income for child support purposes, the trial court should make the appropriate adjustment in the child support Brenda Berg is ordered to pay. *See* N.D. Admin. Code § 75–02–04.1–01(7)(d).

### B

[¶ 16] In his appellate brief, Weston Berg requests reimbursement of past premiums paid by him for the children's health insurance coverage. This Court has found no indication in the record, and Weston Berg has not directed this Court to any record evidence, showing that he requested the trial court to award him reimbursement of past health insurance premiums. We have found no ruling on this issue by the trial court and no evidence the court was given an opportunity to rule on this particular issue. We conclude, therefore, Weston Berg has failed to preserve this issue on appeal. *See Roise v. Kurtz,* 1998 ND 228, ¶ 5, 587 N.W.2d 573.

### IV. Attorney Fees

[¶ 17] Weston Berg asserts the district court abused its discretion in only awarding him $350 attorney fees for the prior appeal, and he requests attorney fees on this appeal.

### A

■ [¶ 18] In *Jorgenson v. Ratajczak,* 1999 ND 65, ¶ 16, 592 N.W.2d 527, this Court, quoting *Bakes v. Bakes,* 532 N.W.2d 666, 669 (N.D.1995), outlined the standard for awarding attorney fees in divorce actions:

"The trial court has authority in a divorce case to award attorney fees for proceedings in the trial court and upon appeal. N.D.C.C. § 14–05–23. The principal standards guiding an award of attorney fees in a divorce action are one spouse's need and the other's ability to pay. The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party has unreasonably increased the time spent on the case. We will not overturn an award of attorney fees unless the trial court abused its discretion."

(Citations omitted). In the original divorce proceedings the trial court awarded attorney fees to Brenda Berg. While the judgment was reversed in part and the case remanded for further proceedings as a result of Weston Berg's appeal, the original divorce decree was primarily affirmed. Under these circumstances, we conclude Weston Berg has failed to demonstrate the district court abused its discretion in awarding him $350 for attorney fees in the prior appeal.

### B

■ [¶ 19] Weston Berg seeks an award of attorney fees on this appeal, under N.D.C.C. § 14–05–22(5), which provides:

In any custody or visitation proceeding in which a parent is found to have

perpetrated domestic violence, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, all court costs, attorneys' fees, evaluation fees, and expert witness fees must be paid by the perpetrator of the domestic violence unless those costs would place an undue financial hardship on that parent.

[¶ 20] In *Berg I*, 606 N.W.2d 895, 2000 ND 36, ¶¶ 25, 26, this Court addressed the issue of the trial court ordering Weston Berg to pay a portion of the guardian ad litem fees, expert witness fees, and Brenda Berg's attorney fees:

> Although N.D.C.C. § 14–05–22(5) indicates the perpetrator of domestic violence should ordinarily be responsible for costs and fees, we do not believe the legislature intended the statute to authorize a "blank check" to the opposing party. The trial court is authorized to assess costs in a different manner if assessing all costs against the perpetrator of domestic violence would result in "undue financial hardship." "Undue" is defined as "[e]xcessive or unwarranted." Black's Law Dictionary 1529 (7th ed.1999). Accordingly, if the opposing party's conduct unreasonably increases the expenses of litigation, resulting in excessive or unwarranted costs and fees, the court has discretion to apportion the costs and fees between the parties.

The trial court in this case expressly considered N.D.C.C. § 14–05–22(5), but concluded imposing liability upon Brenda Berg for all of the costs and fees would create an undue financial hardship upon her. The trial court expressly found "that a substantial portion of the court costs, attorney fees, evaluation fees and expert witness fees ... were excessive and unnecessary" because of Weston Berg's litigious conduct. Upon review of the record in this case, including the financial circumstances of the parties and the court's finding Weston Berg was responsible for unreasonably increasing the litigation expenses, we conclude the trial court did not abuse its discretion in assessing costs and fees.

We upheld the trial court's award of attorney fees to Brenda Berg in the original decree and have now upheld the trial court's award of $350 in attorney fees to Weston Berg for the prior appeal in *Berg I*. Our preference is to have the trial court initially address the issue of attorney fees on appeal because the trial court is generally in a better position to weigh the relevant factors. *See Zuger v. Zuger*, 1997 ND 97, ¶ 38, 563 N.W.2d 804. Consequently, on remand we direct the district court to consider Weston Berg's request of attorney fees for this appeal under N.D.C.C. § 14–05–22(5).

## V. Conclusion

[¶ 21] In accordance with this opinion, the court's award of unsupervised visitation for Brenda Berg is affirmed. The court's directive Weston Berg pay for the children's health insurance coverage is reversed and, upon remand, the court is instructed to enter an order requiring Brenda Berg to pay for the children's health insurance coverage. The trial court's award of attorney fees to Weston Berg for the appeal in *Berg I* is affirmed. Weston Berg's request for attorney fees on this appeal is remanded to the district court for consideration.

[¶ 22] DONOVAN FOUGHTY, D.J., WILLIAM A. NEUMANN and MARY MUEHLEN MARING, JJ., concur.

[¶ 23] DONOVAN JOHN FOUGHTY, D.J., sitting in place of KAPSNER, J., disqualified.

SANDSTROM, Justice, concurring in the result.

[¶ 24] I agree with the result reached by the majority. I write separately because the majority states, at ¶ 9, "The primary purpose of visitation is to promote the best interests of the children, not the wishes of the parents," and refers to visitation as only a "wish" of the noncustodial parent. The majority misstates the public policy of this state as established by the legislature and ignores the constitutional rights of parents.[2]

### I

[¶ 25] Over two decades ago, when faced with the proposition that noncustodial parents should not have a right to visitation, this Court summarized its view of the importance of a noncustodial parent's visitation rights:

> The adoption of the theory that the non-custodial parent should have no legally enforceable right of visitation would represent a major shift in policy in this state. The policy that has been followed in this state is in accord with the policy applied by the Wisconsin Supreme Court in *Marotz v. Marotz,* 80 Wis.2d 477, 259 N.W.2d 524 (1977).
>
> > "It is a fundamental principle in this state that visitation privileges, like custodial rights, are created to promote the best interests of the child. *Neblett v. Neblett,* 274 Wis. 574, 571 [sic], 81 N.W.2d 61 (1957). As we

stated in *Patrick v. Patrick,* 17 Wis.2d 434, 439, 117 N.W.2d 256, 259 (1962):

> > > 'Minor children are entitled to the love and companionship of both parents insofar as this is possible and consistent with their welfare.'
> >
> > For this reason, visitation privileges granted to the non-custodial parent must not be viewed merely as a privilege of that parent, but as a right of the child which is not to be subverted by the custodian." 80 Wis.2d at 486, 259 N.W.2d at 529–30.
>
> We believe that the theory that the non-custodial parent should have no legally enforceable right of visitation represents such a shift in policy in North Dakota that the question of whether or not it should be adopted should be left to the legislature.

*Gardebring v. Rizzo,* 269 N.W.2d 104, 110 (N.D.1978). After *Gardebring,* the North Dakota Legislature agreed with the Court's view of the importance of a noncustodial parent's visitation rights and adopted N.D.C.C. § 14–05–22(2), which provides:

> After making an award of custody, the court shall, upon request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health.

This Court characterized the legislature's actions as "consistent with our opinion in

---

**2.** In footnote one, the majority misconstrues the content of this opinion concurring in the result. I have written separately to set forth the constitutional and statutory foundation of a noncustodial parent's visitation rights because the majority fails to recognize the visitation rights of noncustodial parents, refers to

the visitation rights of a noncustodial parent as a mere "wish or desire," and states the right of visitation belongs only to the child. This separate opinion focuses on the constitutional and statutory rights of noncustodial parents and does not examine the "structure of that visitation."

*Gardebring.*" *Burich v. Burich,* 314 N.W.2d 82, 87 (N.D.1981). The language of N.D.C.C. § 14–05–22(2) has not changed since the *Burich* case.

[¶ 26] Since *Gardebring,* this Court has articulated a parent's right to his or her children in the context of grandparent visitation, custodial parent relocation, initial custody determination, paternity determination, and visitation enforcement. *See, e.g., Hoff v. Berg,* 1999 ND 115, ¶¶ 8, 10, 595 N.W.2d 285 (grandparent visitation); *Peterson v. Peterson,* 1997 ND 14, ¶ 12, 559 N.W.2d 826 (grandparent visitation); *Mansukhani v. Pailing,* 318 N.W.2d 748, 750–51 (N.D.1982) (grandparent visitation); *Olson v. Olson,* 2000 ND 120, ¶ 4, 611 N.W.2d 892 (custodial parent relocation); *Hanson v. Hanson,* 1997 ND 151, ¶ 10, 567 N.W.2d 216 (custodial parent relocation); *Ackerman v. Ackerman,* 1999 ND 135, ¶ 13, 596 N.W.2d 332 (custodial parent relocation); *Egan v. D.M.G.,* 317 N.W.2d 115, 119–20 (N.D.1982) (paternity and visitation); *K.L.G. v. S.L.N.,* 2001 ND 33, ¶ 11, 622 N.W.2d 232 (enforcement of visitation); *Healy v. Healy,* 397 N.W.2d 71, 73 (N.D.1986); (enforcement of visitation); *Bergstrom v. Bergstrom,* 320 N.W.2d 119, 123 (N.D.1982) (enforcement of visitation).

[¶ 27] Yet often when setting forth the purpose of visitation rights, this Court appears to relegate a noncustodial parent's interest in visitation to the status of a mere wish or desire. *See, e.g., Stoppler v. Stoppler,* 2001 ND 148, ¶ 14, 633 N.W.2d 142; *Ackerman v. Ackerman,* 1999 ND 135, ¶ 13, 596 N.W.2d 332. Any reference to a noncustodial parent's interest in visitation as a "wish" or "desire" is contrary to this state's public policy that noncustodial parents have "rights of visitation." *See* N.D.C.C. § 14–05–22(2) ("the court shall, upon request of the noncustodial parent, grant such rights of visitation as will en-

able the child and the noncustodial parent to maintain a parent-child relationship").

[¶ 28] The reference to noncustodial parents' visitation rights as "wishes" or "desires" originated in *Muraskin v. Muraskin,* 336 N.W.2d 332, 336 (N.D.1983). *Muraskin* involved a lengthy litigation over custody and visitation rights. The mother had moved to Florida following the divorce, and she asked the district court "to modify the summer visitation to allow the visitation to be in her home in Florida, rather than in the Grand Forks area." *Id.* at 334. In discussing the district court's finding that the visitation order should be changed because of the children's interest in "their heritage and family background," this Court stated:

> If the children were asked to express a wish or desire regarding visitation with divorced parents, the location or relocation of the divorced parent could play a dominant role in the child's decision if weight is given to the child's wishes. A divorced parent could relocate to an area of great interest merely to entice the child to express the wish to visit at that location.
>
> Whatever the interrelation or connection visitation or its place of change may have to "interest in heritage" was not established. Neither is it obvious.
>
> In matters pertaining to custody and visitation rights, we are concerned primarily with the best interests of the children and not with the wishes or desires of either parent. *Burich v. Burich,* 314 N.W.2d 82 (N.D.1981).

*Id.* at 336. The Court's citation to *Burich* supports the statement that when structuring visitation, the Court is guided by the best interests of the child, but the language regarding the "wishes or desires of either parent" is found solely in *Muraskin. See Burich,* 314 N.W.2d at 86–87; *Muraskin,* 336 N.W.2d at 336.

[¶ 29] Over time, the phrase from *Muraskin* has been altered to the phrase used by the majority, "the primary purpose of visitation is to promote the best interests of the children, not the wishes of the parents."[3] In its current form, the phrase can be read as an attempt to reduce a noncustodial parent's visitation right to a mere hope or dream. Once the law on a subject is declared by statute, common law cannot operate to modify the rights created by statute. *See, e.g.,* N.D.C.C. § 1-01-06; *In re M.C.H.,* 2001 ND 205, ¶ 9, 637 N.W.2d 678; *Effertz v. North Dakota Workers' Comp. Bureau,* 481 N.W.2d 223, 225 (N.D.1992). Any attempt to minimize the interest of a noncustodial parent would be in clear conflict with the "rights of visitation" expressed by the legislature. N.D.C.C. § 14-05-22(2).

II

[¶ 30] Not only is a noncustodial parent's right to visitation grounded in the public policy adopted by our legislature, but both the United States Supreme Court and this Court have stated that a parent's right to companionship with his or her child is constitutionally protected. *Troxel v. Granville,* 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ("the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children"); *Hoff v. Berg,* 1999 ND 115, ¶¶ 8, 10, 595 N.W.2d 285 (Article I, sections 1 and 12, of the North Dakota Constitution secure the right parents have in the "care, custody, and management of their children."); *Peterson v. Peterson,* 1997 ND 14,

¶ 12, 559 N.W.2d 826 ("Parental choices about the upbringing of children, like those about marriage and family life, are among those associational rights that the United States Supreme Court has ranked 'of basic importance in our society,' and are 'sheltered by the Fourteenth Amendment against the state's unwarranted usurpation, disregard, or disrespect.'" (internal citations omitted)). The Supreme Court has described the interest of parents in the care, custody, and control of their children as "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel,* at 65, 120 S.Ct. 2054, 147 L.Ed.2d 49.

[¶ 31] The United States Supreme Court, in *Troxel v. Granville,* relied upon "extensive precedent" when outlining the fundamental rights of parents to their children. *Troxel,* 530 U.S. at 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (citing *Washington v. Glucksberg,* 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Parham v. J.R.,* 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Pierce v. Soc'y of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). In *Peterson,* we relied on some of the same as well as other United States Supreme

---

**3.** *See, e.g., McDowell v. McDowell,* 2001 ND 176, ¶ 28, 635 N.W.2d 139; *Stoppler v. Stoppler,* 2001 ND 148, ¶ 14, 633 N.W.2d 142; *Tibor v. Tibor,* 2001 ND 43, ¶ 8, 623 N.W.2d 12; *K.L.G. v. S.L.N.,* 2001 ND 33, ¶ 11, 622 N.W.2d 232; *Johnson v. Johnson,* 2000 ND 170, ¶ 24, 617 N.W.2d 97; *Schiff v. Schiff,* 2000 ND 113, ¶ 9, 611 N.W.2d 191; *Ackerman v. Ackerman,* 1999 ND 135, ¶ 13, 596 N.W.2d 332; *Moilan v. Moilan,* 1999 ND 103, ¶ 29, 598 N.W.2d 81; *Reinecke v. Griffeth,* 533 N.W.2d 695, 698 (N.D.1995).

Court cases when describing a parent's right to his or her children. *Peterson,* 1997 ND 14, ¶ 12, 559 N.W.2d 826 (citing *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *M.L.B. v. S.L.J.,* 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996); *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Lassiter v. Dep't of Soc. Serv.,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Pierce v. Soc'y of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)).

[¶ 32] We have also recognized a parent's visitation rights with his or her children are not absolute and can be taken away when the child's best interests would be harmed through further contact with the parent. *K.L.G. v. S.L.N.,* 2001 ND 33, ¶ 11, 622 N.W.2d 232; *see also Schiff v. Schiff,* 2000 ND 113, ¶ 9, 611 N.W.2d 191 (to justify an onerous restriction on visitation, physical or emotional harm resulting from the visitation must be demonstrated in detail); *Hendrickson v. Hendrickson,* 2000 ND 1, ¶ 21, 603 N.W.2d 896 (denying a noncustodial parent visitation with a child is an onerous restriction, such that physical or emotional harm resulting from the visitation must be demonstrated in detail before it is imposed); *Ackerman v. Ackerman,* 1999 ND 135, ¶ 13, 596 N.W.2d 332 (the noncustodial parent is deprived of visitation only if visitation is likely to endanger the child's physical or emotional health); *Healy v. Healy,* 397 N.W.2d 71, 73 (N.D.1986) (an order denying visitation must be demonstrated on a standard of proof higher than probable cause). Only in the most egregious situations may a parent's rights be completely terminated by the State. *See, e.g.,* N.D.C.C. § 27-20-44; *In re T.K.,* 2001 ND 127, ¶ 12, 630 N.W.2d 38 (parents' fundamental rights to

their children are not absolute, and parents must provide care to their children that at least satisfies the minimum community standards).

### III

[¶ 33] When defining visitation rights, we must recognize that noncustodial parents have a constitutionally protected right to a relationship with their children. *See, e.g., Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Hoff v. Berg,* 1999 ND 115, ¶ 12, 595 N.W.2d 285. The statutorily defined best interests of the child should be used only to decide how the practical aspects of these rights will be balanced to maintain the parent-child relationship, not as a means to define visitation rights as belonging solely to the child. *See* N.D.C.C. § 14-05-22(2). We must not trivialize or attempt to erode the constitutionally protected rights of noncustodial parents by continuing to refer to their visitation rights as mere wishes or privileges.

[¶ 34] Dale Sandstrom